

Copyright  2011  ProQuest LLC.
All Rights Reserved

COMMITTEE REPORTS

112th Congress, 1st Session

HOUSE Report 112-10

H.R. 394

*112 H. Rpt. 10*

FEDERAL COURTS JURISDICTION AND VENUE CLARIFICATION ACT OF 2011

February 11, 2011--Ordered to be printed

**TEXT:**

NOTICE:
{D> Text within these symbols is deleted <D}

FEBRUARY 11, 2011.--Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. SMITH of Texas, from the Committee on the Judiciary, submitted the following

R E P O R T

[To accompany H.R. 394]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 394) to amend title 28, United States Code, to clarify the jurisdiction of the Federal courts, and for other purposes, having considered the same, reports favorably thereon without amendment and recommends that the bill do pass.

**CONTENTS** **Page**

Purpose and Summary                                                          1

| | |
|---|---|
| Background and Need for the Legislation | 2 |
| Hearings | 3 |
| Committee Consideration | 3 |
| Committee Votes | 3 |
| Committee Oversight Findings | 4 |
| New Budget Authority and Tax Expenditures | 4 |
| Congressional Budget Office Cost Estimate | 4 |
| Performance Goals and Objectives | 5 |
| Constitutional Authority Statement | 5 |
| Advisory on Earmarks | 5 |
| Section-by-Section Analysis | 5 |
| Changes in Existing Law Made by the Bill, as Reported | 24 |

**Purpose and Summary**

The "Federal Courts Jurisdiction and Venue Clarification Act of 2011" brings more clarity to the operation of Federal jurisdictional statutes and facilitates the identification of the appropriate State or Federal court where actions should be brought. Judges believe the current rules force them to waste time determining jurisdictional issues at the expense of adjudicating underlying litigation. The contents of the bill are based on recommendations developed and approved by the United States Judicial Conference.

**Background and Need for the Legislation**

### Legislative History

H.R. 394 incorporates the text of H.R. 4113 from the 111th Congress in addition to four minor changes developed by the Department of Justice and the Senate Judiciary Committee in December 2010.

Title I of H.R. 4113 is based on another bill, H.R. 5440, authored by Judiciary Committee Chairman Lamar Smith in the 109th Congress. The Courts and Intellectual Property Subcommittee marked-up H.R. 5440 on May 24, 2006, but the legislation was never considered by the full Committee. In addition to the contents of H.R. 5440, H.R. 4113 as introduced includes a Title II that addresses Federal venue and transfer.

The House passed H.R. 4113 on September 28, 2010, by voice vote under suspension of the Rules. The Senate adjourned before it could take up an amended version of the bill that now comprises the text of H.R. 394.

### Process for Vetting the Bill in the 111th Congress

Given the press of other agenda items in 2010, the Judiciary Committee could not devote "formal" process to the evaluation of H.R. 4113 during the 111th Congress. In other words, while the bill was considered important, the Committee did not have time to conduct a hearing on H.R. 4113, followed by a markup. Instead, the Administrative Office of the US Courts ("AO") functioned as a clearinghouse to vet the bill and newly-developed revisions to it with the Judicial Conference's Federal-State Jurisdiction Committee, academics, and interested stakeholders. The main stakeholder groups include the American Bar Association ("ABA"), Lawyers for Civil Justice ("LCJ"), the Federal Bar Association ("FBA"), the American Association for Justice ("AAJ"), and the U.S. Chamber of Commerce.

Legal scholars from the law schools of the University of Houston, Chicago-Kent, Loyola, and Duke endorsed

changes to the original text of H.R. 4113, which were developed by Professor Arthur Hellman of the University of Pittsburgh School of Law, who testified at the 2005 Subcommittee hearing and contributed to the project in the 111th Congress. (Two of these scholars are the authors of removal chapters in, respectively, *Moore's Federal Practice* and *Wright and Miller's Federal Practice and Procedure*--the leading treatises on Federal civil procedure and practice.) Professor Hellman's recommendations are confined to the removal provisions of Title I. In addition, the AO received feedback from the ABA and AAJ on the amount in controversy, declarations regarding relief, removal, and transfer. LCJ and FBA comments reflected general support for the bill.

The point of this exercise was to identify and delete those provisions that were considered controversial by prominent legal experts and advocacy groups. This informal vetting process served the functional equivalent of a hearing or markup and increased the likelihood that H.R. 4113 could be passed by both houses of Congress prior to adjournment *sine die.*

As noted, the House passed the bill by voice vote under suspension of the Rules on September 28, 2010. The Senate Judiciary Committee insisted on minor amendments that were agreed to by the House principals. These amendments include the following:

Maintaining the status quo treatment of derivative jurisdiction. H.R. 4113 as passed by the House made technical changes to §§1441(f) to clarify that the derivative jurisdiction doctrine has no application to other sections within title 28. Prior to 1986, the derivative jurisdiction doctrine meant that if a state court lacked jurisdiction over an exclusively Federal matter, removal to Federal court under §§1441(f) was nonetheless barred because the US district court's jurisdiction was not "derivative" of the jurisdiction that attached in state court. Justice Department attorneys said that although it is infrequently used, the doctrine of derivative jurisdiction is indeed sometimes invoked by them when suits involving Federal officers and agencies are removed to Federal court. To illustrate, a defendant seeking to escape a state court forum brings a third-party action against a Federal employee. If the Federal employee was acting within the scope of the employee's employment, the United States can remove the case to Federal court under 28 USC §§1442 & §§2679. The Federal court then applies the derivative jurisdiction doctrine and dismisses the third-party claim against the Federal employee, remanding the underlying action to state court. DOJ says that in such instances the third-party claim against a Federal employee is often brought merely to obtain a Federal forum, thereby frustrating the plaintiff's choice of forum.

A clarification that a district court, and not state court, can make findings regarding the appropriateness of certain removals. This is a non-substantive change.

Substitution of the generic word "entity" for "party" in one instance, consistent with the context of its usage.

Deletion of an extra comma in one provision.

H.R. 394 includes the base text as approved by the House in the 111th Congress along with the Senate changes.

## Hearings

The Committee on the Judiciary held no hearings on H.R. 394.

## Committee Consideration

On January 26, 2011, the Committee met in open session and ordered the bill H.R. 394 favorably reported without amendment, by voice vote, a quorum being present.

## Committee Votes

In compliance with clause 3(b) of rule XIII of the Rules of the House of Representatives, the Committee advises

that there were no recorded votes during the Committee's consideration of H.R. 394.

**Committee Oversight Findings**

In compliance with clause 3(c)(1) of rule XIII of the Rules of the House of Representatives, the Committee advises that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

**New Budget Authority and Tax Expenditures**

Clause 3(c)(2) of rule XIII of the Rules of the House of Representatives is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

**Congressional Budget Office Cost Estimate**

In compliance with clause 3(c)(3) of rule XIII of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 394, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 402 of the Congressional Budget Act of 1974:

U.S. Congress,

Washington, DC, February 3, 2011.

Hon. LAMAR SMITH, CHAIRMAN,

Committee on the Judiciary,

House of Representatives, Washington, DC.

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 394, the "Federal Courts Jurisdiction and Venue Clarification Act of 2011."

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Martin von Gnechten, who can be reached at 226-2860.

Sincerely,

Douglas W. Elmendorf,

Director.

Enclosure

cc:

Honorable John Conyers, Jr.

Ranking Member

*H.R. 394--Federal Courts Jurisdiction and Venue Clarification Act of 2011.*

H.R. 394 would make several changes to judicial procedures, including the determination of original jurisdiction and court venue for certain types of cases. H.R. 394 would specify the court of original jurisdiction for certain cases involving resident aliens and corporations. In addition, H.R. 394 would change how the venues for Federal court cases

are determined, particularly when the cases involve multiple districts.

Based on information from the Administrative Office of the U.S. Courts, CBO estimates that implementing H.R. 394 would have no significant budgetary impact. Enacting H.R. 394 would not affect direct spending or revenues; therefore, pay-as-you-go procedures do not apply.

H.R. 394 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would not affect the budgets of State, local, or tribal governments.

The CBO staff contact for this estimate is Martin von Gnechten. The estimate was approved by Theresa Gullo, Deputy Assistant Director for Budget Analysis.

**Performance Goals and Objectives**

The Committee states that pursuant to clause 3(c)(4) of rule XIII of the Rules of the House of Representatives, H.R. 394 clarifies the operation of Federal jurisdictional statutes and assists Federal judges in identifying the appropriate State or Federal court where actions should be brought.

**Constitutional Authority Statement**

The Committee finds the authority for this legislation in article I, section 8, clause 9 and clause 18; and article III, section 1, of the Constitution.

**Advisory on Earmarks**

In accordance with clause 9 of rule XXI of the Rules of the House of Representatives, H.R. 394 does not contain any congressional earmarks, limited tax benefits, or limited tariff benefits as defined in clause 9(e), 9(f), or 9(g) of Rule XXI.

**Section-by-Section Analysis**

The following discussion describes the bill as reported by the Committee.

*Sec. 1. Short title; table of contents.* Section 1(a) sets forth the short title of the bill as the "Federal Courts Jurisdiction and Venue Clarification Act of 2011." Subsection (b) provides a table of contents and the remaining text:

## TITLE I--JURISDICTIONAL IMPROVEMENTS

Sec. 101. Treatment of resident aliens.

Sec. 102. Citizenship of corporations and insurance companies with foreign contacts.

Sec. 103. Removal and remand procedures.

Sec. 104. Effective date.

## TITLE II--VENUE AND TRANSFER IMPROVEMENTS

Sec. 201. Scope and definitions.

Sec. 202. Venue generally.

Sec. 203. Repeal of section 392.

Sec. 204. Change of venue.

Sec. 205. Effective date.

**TITLE I--JURISDICTIONAL IMPROVEMENTS**

**SEC. 101. TREATMENT OF RESIDENT ALIENS.**

The Constitution provides the basis for Federal court jurisdiction over disputes between citizens of different states ("diversity jurisdiction") and over disputes involving citizens of the United States and citizens or subjects of foreign states ("alienage jurisdiction"). Currently, diversity jurisdiction is available when the matter in controversy exceeds $75,000 and is between citizens of different states. *See* 28 U.S.C. $\S\S1332(a)(1)$. Under the long-standing complete diversity requirement, for diversity jurisdiction to be available, no plaintiff and defendant can be from the same state. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806). The traditional reason given for providing for diversity jurisdiction is "a fear that state courts would be prejudiced against those litigants from out of state." Charles Alan Wright & Mary Kay Kane, *Law of Federal Courts* $\S$23, at 144 (6th ed. 2002).

Although the Constitution permits the assertion of Federal jurisdiction over disputes involving aliens, established law bars the assertion of jurisdiction over a dispute that involves only aliens. Alienage jurisdiction exceeds the limits of Article III unless a citizen of the United States also appears as a party. *See Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303 (1809). Cognizant of this long-standing constitutional limitation, section 1332 allows for jurisdiction over aliens in two situations, both of which involve U.S. citizens. First, paragraph 1332(a)(2) applies to disputes between citizens of a state and citizens or subjects of a foreign state. Second, paragraph 1332(a)(3) applies to disputes between citizens of different states in which citizens or subjects of a foreign state are additional parties. Jurisdiction based on paragraphs 1332(a)(2) or (3) is still subject to the minimum amount in controversy requirement.

In general, the Federal courts have taken a fairly narrow view of the scope of paragraph 1332(a)(2) jurisdiction, declining on statutory grounds to assert jurisdiction over disputes in which aliens appear on both sides of the litigation. *See, e.g., Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.,* 506 F.2d 757 (5th Cir. 1975). Even though U.S. citizens may appear on one side of the litigation, the presence of aliens as opposing parties(even aliens from different foreign countries) has proven fatal to the assertion of jurisdiction. *See generally Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.,* 10 F.3d 425, 428 (7th Cir. 1993); 15 Moore's Federal Practice, $\S\S102.77$ (3d ed. 2001). In actions proceeding under paragraph 1332(a)(3), this rule has not been applied with the same rigor. More specifically, when a claim between diverse U.S. citizens grounds the jurisdiction and aliens appear as additional parties on both sides of the litigation, jurisdiction has been upheld. *See Transure, Inc. v. Marsh & McLennan, Inc.,* 766 F.2d 1297, 1298-99 (9th Cir. 1985) (upholding jurisdiction under section 1332(a)(3)); *Dresser Industries, Inc. v. Underwriters at Lloyd's of London,* 106 F.3d 494, 500 (3d Cir. 1997) (same).

In 1988, Congress added the "resident alien proviso" to subsection 1332(a) through enactment of the Judicial Improvements and Access to Justice Act (*Pub. L. No. 100-702*). The proviso states that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. $\S\S1332(a)$. The purpose of that change was to preclude Federal alienage jurisdiction under paragraph 1332(a)(2) in suits between a citizen of a state and an alien permanently residing in the same state, thereby also reducing the caseload of the Federal courts. *See, e.g., China Nuclear Energy Industry Corp. v. Andersen, LLP,* 11 F. Supp. 2d 1256, 1258-59 (D. Colo. 1998). In such situations, the permanent resident alien has appreciable connections to the state, and there was perceived to be no need to provide for a Federal forum to protect the alien against possible bias in state court. Courts have interpreted the reference to permanent aliens to mean only those aliens who have been given "green cards." *See Foy v. Schantz, Schatzman & Aaronson, P.A.,* 108 F.3d 1347, 1349 (11th Cir. 1997) (holding that the "permanent resident alien provision of $\S\S1332(a)$ applies only to aliens who have received permission from the INS to remain permanently in this country").

Although the 1988 amendment curtailed alienage jurisdiction in one setting, the "deeming" feature created an arguable basis for expansion of alienage jurisdiction in other settings--a problem with which the courts have struggled. *See, e.g., Arai v. Tachibana,* 778 F. Supp. 1535 (D. Haw. 1991), and *Saadeh v. Farouki,* 107 F.3d 52 (D.C. Cir. 1997). Under paragraph 1332(a)(1), two resident aliens from different states might each be deemed to be a citizen of his or her respective state of domicile and claim access to Federal diversity jurisdiction in circumstances that would appear to violate the venerable rule of *Hodgson v. Bowerbank (supra).* Under paragraphs 1332(a)(2)-(3), additional possibilities emerge for litigants involved in litigation with resident aliens to seek to expand their access to Federal court beyond what was available before the deeming proviso took effect in 1988. For example, in *Singh v. Daimler-Benz* AG, 9 F.3d 303 (3d Cir. 1993), the court allowed a permanent resident alien in one state to proceed against a U.S. corporation resident in another state and a non-resident foreign corporation, even though the configuration of parties would have apparently failed to support a finding of jurisdiction under either paragraphs 1332(a)(2) or (a)(3) in the absence of the deeming provision.

To correct the problem, section 101 eliminates the resident alien proviso and its deeming feature altogether, along with its potential for jurisdictional expansion. By eliminating the proviso, resident aliens would no longer be deemed to be U.S. citizens for purposes of diversity jurisdiction, thereby avoiding the possibly anomalous results under paragraphs 1332(a)(1)-(3). In place of the proviso, section 101 would provide that the district courts shall not have diversity of citizenship jurisdiction under paragraph 1332(a)(2) of a claim between a citizen of a state and a citizen or subject of a foreign state admitted to the United States for permanent residence and domiciled in the same state. Section 101 of the bill would thus achieve the goal of modestly restricting jurisdiction, which Congress sought to accomplish when it first enacted the resident alien proviso, and would avoid the threat of the expansion of jurisdiction now posed by the proviso. State court forums would remain available to aliens if Federal court forums were foreclosed.

By attaching this modest restriction only to paragraph 1332(a)(2), the amendment would permit resident aliens to appear as additional parties to disputes under paragraph 1332(a)(3), without their status as deemed U.S. citizens of their state of residence being treated as a basis for either establishing or defeating the diversity of U.S. citizenship that grounds jurisdiction under this provision. (References to sections 1335 (interpleader) and 1441 (removal) are no longer necessary in the replacement sentence because 1335 is dependent upon diversity jurisdiction under section 1332, and similarly, section 1441 applies only when district courts have original jurisdiction--which here would be through diversity.)

## SEC. 102. CITIZENSHIP OF CORPORATIONS AND INSURANCE COMPANIES WITH FOREIGN CONTACTS.

Section 102 amends paragraph *1332(c)(1) of title 28, United States Code,* to specify the treatment of citizenship in diversity actions involving corporations, as well as insurance companies involved in direct actions. The purpose is to clarify how foreign contacts should affect the determination of whether diversity of citizenship exists when a case involving these entities is filed in or removed to Federal court.

*Actions involving corporations*

When one of the parties to a civil action is a corporation, subsection 1332(c) deems that corporation to be a citizen of any "State" in which it has been incorporated "and of the State where it has its principal place of business." The quoted phrase was added to paragraph 1332(c)(1) in 1958 to expand the concept of corporate citizenship. The intent was to preclude diversity jurisdiction over a dispute between an in-state citizen and a corporation incorporated or primarily doing business in the same state. In these situations, neither party faces a threat of bias if the action were to be resolved in state court.

For example, today under subsection 1332(c), if a corporation incorporated in Delaware has its principal place of business in Florida, it is deemed to be a citizen of both Delaware and Florida. If a Florida citizen or a Delaware citizen sues that corporation, diversity jurisdiction would be defeated because both the plaintiff and defendant would be treated

as citizens from the same state (Florida or Delaware).

When an action involves a U.S. corporation with foreign contacts or foreign corporations that operate in the United States, Federal courts have struggled to apply this statute. *See* C. Wright & M. Kane, *supra*, §S27, at 170. The difficulty occurs primarily because paragraph 1332(c)(1) refers to a "State" and does not specify whether the term includes contacts with a foreign state (country of incorporation or principal place of doing business). Subsection (e) of section 1332 defines "States" as including the Territories, the District of Columbia, and the Commonwealth of Puerto Rico. Some courts have noted that because the word "States" in the subsection begins with a capital "S," it applies only to the fifty states and the other places specified in the definition and therefore does not apply to corporate citizens of foreign states. *See, e.g., Torres v. Southern Peru Copper Corp.,* 113 F.3d 540, 543 (11th Cir. 1997); *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1559 (5th Cir. 1989). Other courts applying paragraph 1332(c)(1) have concluded that the word "States" should mean foreign states, as well as states of the Union. *See, e.g., Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987 (9th Cir. 1994).

The following are examples of how the courts have reached different conclusions in trying to apply the provision in the absence of specific references to "foreign states." Some circuits have treated a U.S. corporation with its principal place of business abroad as a citizen only of its place of incorporation. *See, e.g., Cabalceta, supra* (plaintiffs from Costa Rico (aliens) brought suit against Standard Fruit Company, a Delaware corporation with its principal place of business in Latin America); *Torres, supra* (alien plaintiffs brought suit against Delaware corporation with principal place of business in Peru). Such treatment of the corporations as citizens of Delaware while ignoring their foreign contacts resulted in decisions upholding the availability of Federal alienage jurisdiction and allowing the actions to proceed in Federal court.

The Ninth Circuit, in contrast, has rejected any distinction between foreign and domestic corporations; each would be deemed a citizen of both its place of incorporation and its principal place of business. *See Nike, Inc., supra,* at 990. Although technically dicta as applied to U.S. corporations with business centers abroad, the Ninth Circuit's approach has been applied to U.S. corporations in a number of district court decisions. *See* Note, David A. Greher, *The Application of 28 U.S.C. §S1332(c)(1) to Alien Corporations: A Dual Citizenship Analysis,* 36 Va. J. Int'l L. 233, 251 n.92 (1995) (collecting cases). Such an approach would result in a denial of alienage jurisdiction over suits brought by aliens against U.S. corporations that have business centers abroad.

The amendment in section 102 would resolve this division of authority by implementing the diversity-curtailing intent of this provision with regard to corporations with foreign activities. It would insert the words "foreign state" in two places in paragraph 1332(c)(1) to make it clear that all corporations, foreign and domestic, would be regarded as citizens of both their place of incorporation and their principal place of business. The amendment would result in a denial of diversity jurisdiction in two situations: (1) where a foreign corporation with its principal place of business in a state sues or is sued by a citizen of that same state, and (2) where a citizen of a foreign country (alien) sues a U.S. corporation with its principal place of business abroad. Such a change would bring a degree of clarity to an area of jurisdictional law now characterized by conflicting approaches in the Federal courts. State courts of general jurisdiction would remain available to the parties.

By more clearly defining citizenship of corporations with foreign ties, the legislation would deny access to a Federal court in a small range of cases for which a Federal forum might be available today. For example, a company might have its principal place of business in a foreign state and nonetheless choose to incorporate in the United States. Such incorporation would make the corporation a citizen of its state of incorporation and, according to some courts, enable the corporation to claim access to a Federal court in a dispute with another foreign national. (When such disputes arise from allegedly tortious conduct overseas, the Federal courts will often assert jurisdiction only to dismiss under the doctrine of forum non conveniens.) Section 102 would alter the jurisdictional analysis by deeming the corporation to be a citizen of its state of incorporation and of the foreign state where it has its business center, blocking jurisdiction on the well-established ground that disputes between two aliens do not satisfy the jurisdictional requirements of subsection 1332(a). The statute would have no impact on the freedom of corporations to incorporate where they see fit, or to do

business in accordance with their own business plan. It would simply treat them as citizens of their place of incorporation and principal place of business on a basis consistent with the treatment of domestic corporations.

The change made by this amendment follows the definition Congress used for corporate citizenship in the Multiparty, Multiforum Trial Jurisdiction Act of 2002 (*Pub. L. No. 107-273*). More specifically, that law provides that "a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business. . . ." This definition is now codified as 28 U.S.C. §§1369(c)(2).

Section 102 also revises the wording of paragraph 1332(c)(1) so that a corporation shall be deemed a citizen of "every State and foreign state by which it has been incorporated," instead of "any State . . ." (Emphasis added.) Although corporations can incorporate in more than one state, the practice is rare. In applying the present wording of the subsection, most courts have treated such multi-state corporations as citizens of every state by which they have been incorporated. This section would codify the leading view as to congressional intent and treat corporations as citizens of every state of incorporation for diversity purposes. *See* C. Wright & M. Kane, *supra,* §S27, at 167-68.

*Direct actions against insurance companies*

Section 102 amends paragraph 1332(c)(1) to provide the same definition of citizenship for an insurance company engaged in direct action litigation as that proposed above for corporations with foreign contacts. Paragraph 1332(c)(1) presently includes "deeming" language for determining the citizenship of an insurance company involved in direct action litigation, which was added by Congress in 1964 (*Pub. L. No. 88-439, 78 Stat. 445*). The provision now reads as follows:

in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

28 U.S.C. §S1332(c)(1).

In a direct action case, the plaintiff sues the liability insurance company directly without naming as a defendant the insured party whose negligence or other wrongdoing gave rise to the claim. Subsection 1332(c) seeks to prevent such direct actions from qualifying for diversity jurisdiction by deeming the insurance company to be a citizen of the state of which the insured is a citizen, as well as of every state by which the insurer has been incorporated and of the state where it has its principal place of business.

The provision was enacted primarily in response to a surge in diversity case filings against insurance companies in Federal courts in Louisiana. Sen. Rep. No. 1308, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S. Code Cong. & Admin. News, p. 2778. That increase followed adoption of a state statute there in 1959 allowing direct actions against insurance companies.

Because of the broad review of jury verdicts that the Louisiana practice permits, lawyers for plaintiffs in that state greatly preferred to be in Federal court rather than in state court. They were able to convert what otherwise would have been a routine automobile-accident case between two Louisiana citizens into a diversity action by taking advantage of the state statute permitting suit directly against the insurer without joinder of the insured.

C. Wright & M. Kane, *supra,* §S27, at 171. Wisconsin also had enacted a state statute permitting direct actions. *Id.; see also Inman v. MFA Mutual Ins. Co.,* 264 F. Supp. 727 (E.D. Ark. 1967); *Carvin v. Standard Accident Ins. Co.,* 253 F. Supp. 232 (E.D. Tenn. 1966). The 1964 amendment was successful at preventing such direct actions from proceeding in Federal court under diversity jurisdiction. *Northbrook National Ins. Co. v. Brewer,* 493 U.S. 6 (1989) (in applying the provision, the Supreme Court set forth the legislative history).

Today, direct actions continue to exist in some states through specific statutes (*e.g.,* Louisiana, Wisconsin, Arkansas, and Connecticut) and in other states through examination of the nature of certain causes of action authorized in that state (*e.g.,* North Carolina). Yet, for diversity purposes, the citizenship of the insurer in such actions should be no different from that provided for corporations and should recognize the insurer's foreign contacts. At least one court has held that the 1964 amendment should be applied to insurance companies incorporated abroad so as to carry out the intent of the statute and deny diversity jurisdiction. *See Newsom v. Zurich Ins. Co.,* 397 F.2d 280, 282 (5th Cir. 1968).

Section 102 inserts references to "foreign states" to address situations where insurance companies are incorporated abroad or have their principal place of business *See generally* American 1 Law Institute, *Federal Judicial Code Revision Project,* Part III, Removal, pp. 325-332 (2004) *(ALI Project).* abroad. (As a practical matter, this amendment would only affect the limited number of states where direct actions are permitted under state law or such actions are determined to exist.)

## SEC. 103. REMOVAL AND REMAND PROCEDURES.

Section 103 amends sections 1441 and 1446 of title 28 to make improvements in the removal statutes. Some of these proposed statutory changes in this section are similar to those included in the *ALI Project.*1

> 1
>
> *See generally* American Law Institute, *Federal Judicial Code Revision Project,* Part III, Removal, pp. 325-332 (2004) *(ALI Project)*

## Proposed Amendments to Section 1441

Section 103(a)(1) of the bill revises the heading for 28 U.S.C. $S1441 to reflect that its application is limited to civil cases. Section 103(a)(2) inserts a heading for subsection (a) of section 1441 and deletes the last sentence in that subsection (the substance of which is moved to new proposed paragraph 1441(b)(1), see below). Section 103(a)(3) places the provisions that apply to diversity actions under one subsection. This change is intended to make it easier for litigants to locate the provisions that apply uniquely to diversity removal.

Proposed paragraph 1441(b)(1) takes the substance of the last sentence in current subsection 1441(a) and places it within the diversity subsection, as the sentence moved pertains only to diversity cases. Proposed paragraph 1441(b)(2) restates the substance of the last sentence of current subsection 1441(b), which relates only to diversity. (The first sentence currently in subsection 1441(b) is deleted because its reference to Federal question jurisdiction is addressed in the first sentence of subsection 1441(a).)

*Joinder of Federal law claims and state law claims*2

> 2
>
> *See also id.* at 372-374.

Section 103(a)(4) of the bill would amend subsection 1441(c) to clarify the right of access to Federal court upon removal for the adjudication of separate Federal law claims that are joined with unrelated state law claims. Subsection 1441(c) presently authorizes a defendant to remove the entire case whenever a "separate and independent" Federal question claim is joined with one or more non-removable claims. That subsection also states that, following removal, the district court may either retain the whole case or remand all matters in which state law predominates.

Some Federal district courts have declared the provision unconstitutional or raised constitutional concerns because, on its face, subsection 1441(c) purports to give courts authority to decide state law claims for which the Federal courts do not have original jurisdiction (*e.g., Salei v. Boardwalk Regency Corp.,* 913 F. Supp. 993, 1007 (E.D. Mich. 1996)).

Other courts have chosen simply to remand the entire case to state court, thereby defeating access to Federal court (*e.g., Moralez v. Meat Cutters Local 539,* 778 F. Supp. 368 (E.D. Mich. 1991)). Many commentators have recognized the problem, and a leading treatise on the subject declares that "the present statute is useless and ought to have been repealed." *See* C. Wright & M. Kane, *supra,* $S39, at 235.

This section of the bill is intended to make changes to better serve the purpose for which the statute was originally designed, namely to provide a Federal forum for the resolution of Federal claims that fall within the original jurisdiction of the Federal courts. The amendment to subsection 1441(c) would permit the removal of the case but require that a district court remand unrelated state law matters. This sever-and-remand approach is intended to cure any constitutional problems while preserving the defendant's right to remove claims arising under Federal law.

Sections 103(a)(5), (6), and (7)(A) of the bill insert appropriate headings for subsections 1441(d), (e), and (f) for ease of reference.

**Proposed Amendments to Section 1446 and Addition of New Section 1454**

*Separating the removal statute ($S1446) into civil and criminal statutes3*

> 3
>
> See generally *ALI Project* at 328-329.

Sections 103(b)(1) and (b)(2)(B) of the bill amend section 1446 to change the section title and strike certain references to "criminal prosecution" so as to separate the removal provisions relating to civil and criminal proceedings into two statutes. Section 1446 presently contains several subsections, some of which are applicable to removal of both civil and criminal cases, some applicable only to civil cases, and some applicable only to criminal cases. Separating the civil and criminal provisions into two statutes would assist litigants in knowing which provisions were applicable to their type of case.

To effectuate this change, section 103 of the bill codifies the new statute for criminal proceedings as new section 1454. The statute for civil proceedings would continue to be section 1446. To make conforming changes for this amendment, current paragraphs (c)(1)-(5) and subsection (e) of section 1446 would be deleted and re-codified in the new section 1454.

Section 103(b)(2)(A) of the bill inserts a heading for subsection 1446(a). Section 103(b)(3)(A) inserts a heading for subsection 1446(b), while designating the current first paragraph as "(1)."

*Removal in multiple-defendant cases*

Section 103(b)(3) amends subsection 1446(b) by numbering the paragraphs, striking the second unnumbered paragraph of existing subsection 1446(b), which is restated in new paragraph (3), and adding a new second paragraph.

New subparagraph (b)(2)(A) codifies the well-established "rule of unanimity" for cases involving multiple defendants. Under that rule, which is generally traced to the Supreme Court decision in *Chicago, Rock Island & Pac. Ry. v. Martin,* 178 U.S. 245, 251 (1900), all defendants who have been properly joined and served must join in or consent to removal. Like current law, the new provision is limited to cases removed solely under section 1441(a); it has no application to other statutes under which removal is authorized. *See* C. Wright & M. Kane, *supra,* $S40, at 244; *see also ALI Projectat 441-442, 530-532. The other provisions of paragraph (b)(2) address the main objective of this part of the statute, namely to eliminate confusion surrounding the timing of removal when defendants are served at different times.*

The statute currently specifies a 30-day period for "the defendant" to remove the action, but it does not address

situations with multiple defendants, particularly where they are served over an extended period of time during and after the expiration of the first served defendant's 30-day period for removal. In those situations, Federal courts have differed in determining the date on which the 30-day period begins to run. *Compare Bailey v. Janssen Pharmaceutica, Inc.,* 536 F.3d 1202 (11th Cir. 2008) (concluding that the 30-day period runs from the date of service on the last-served defendant and permitting earlier-served defendants who failed to act during their own 30-day period to join in, or consent to, the last-served defendant's timely removal); *Marano Enterprises v. Z-Teca Restaurants, LP,* 254 F.3d 753 (8th Cir. 2001) (holding that each defendant has 30 days to effect removal, regardless of when or if other defendants had sought to remove); and *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527 (6th Cir. 1999) (holding that time for removal in a case involving multiple defendants runs from the date of service on the last-served defendant, and permitting defendants who failed to remove within their own 30-day period to join the timely removal petition of a later-served defendant), with *Getty Oil Corp. v. Ins. Co. of North America,* 841 F.2d 1254 (5th Cir. 1988) (holding that the first-served defendant and all then-served defendants must join in the notice of removal within 30 days after service upon the first-served defendant); *but cf. McKinney v. Board of Trustees of Mayland Community College,* 955 F.2d 924 (4th Cir. 1992) (holding that each defendant may have 30 days to file notice of removal, and rejecting the *Getty Oil* argument that served defendants must join a petition for removal within the time specified for the first-served defendant).

New subparagraph 1446(b)(2)(B) provides that each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal. Subparagraph (b)(2)(C) would also allow earlier-served defendants to join in or consent to removal by a later-served defendant. Fairness to later-served defendants, whether they are brought in by the initial complaint or an amended complaint, necessitates that they be given their own opportunity to remove, even if the earlier-served defendants chose not to remove initially. Such an approach does not allow an indefinite period for removal; plaintiffs could still choose to serve all defendants at the outset of the case, thereby requiring all defendants to act within the initial 30-day period.

This new paragraph clarifies the rule of timeliness and provides for equal treatment of all defendants in their ability to obtain Federal jurisdiction over the case against them without undermining the Federal interest in ensuring that defendants act with reasonable promptness in invoking Federal jurisdiction. The approach follows what one court described as the trend in recent cases. *See Bailey, supra,* at 1205.

New paragraph 1446(b)(3) is essentially the same as the text of the second paragraph of current subsection 1446(b), except that the 1-year limit on removal in diversity cases is made part of a new subsection that gathers all provisions uniquely applicable to removal based on diversity of citizenship.

*Creating a separate subsection for removal in diversity cases*

Section 103(b)(3)(C) of the bill replaces subsection 1446(c) (a criminal removal provision, which would now be codified in new section 1454) with the removal provisions relating solely to diversity, also adding an appropriate heading. This will assist lawyers in finding the statutory rules that uniquely apply to removal based on diversity of citizenship jurisdiction.

*Authorizing removal after one year[4]*

4

An alternative approach was proposed by the ALI, *see ALI Project* at 463, 466-469.

New paragraph 1446(c)(1) adds to the current 1-year limitation on removal of diversity actions a limited exception, authorizing district courts to permit removal after the 1-year period if the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

In 1988, Congress amended this statute to prohibit the removal of diversity cases more than one year after their

commencement. This change was intended to encourage prompt determination of issues of removal in diversity proceedings, and it sought to avoid the disruption of state court proceedings that might occur when changes in the case made it subject to removal. The change, however, led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the 1-year deadline passed. In those situations, some courts have viewed the 1-year time limit as "jurisdictional" and therefore an absolute limit on the district court's jurisdiction. Other courts have viewed the period as "procedural" and therefore subject to equitable tolling (*e.g., Tedford v. Warner-Lambert Co.,* 327 F.3d 423 (5th Cir. 2003)). In light of some ambiguity in the case law (*compare Bowles v. Russell,* 551 U.S. 205 (2007) (rejecting equitable tolling) with *Holland v. Florida,* 130 S. Ct. 2549 (2010) (accepting such tolling)), inclusion of statutory language to resolve the conflict is appropriate.

Proposed paragraph 1446(c)(1) grants district court judges discretion to allow removal after the 1-year limit if they find that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. The inclusion in the new standard of the phrase "in order to prevent a defendant from removing the action" makes clear that the exception to the bar of removal after one year is limited in scope.

*Amount in controversy and removal timing*

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, *e.g.,* when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted. Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied. The "sum claimed" and "legal certainty" standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it. Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately--rather than waiting until future developments provide needed clarification--out of a concern that waiting and removing later will result in the removal's being deemed untimely. In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs. As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. §§1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy. If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an "other paper" within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day period in which to remove the action. The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases. *See McPhail v. Deere & Co.,* 529 F.3d 947 (10th Cir. 2008); *Meridian Security Ins. Co. v. Sadowski,* 441 F.3d 536 (7th Cir. 2006). As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.

Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies. If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d). Section 103(b)(4)(B) makes a technical amendment replacing "thirty" with "30" each place it appears in section 1446. Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454). Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

## SEC. 104. EFFECTIVE DATE.

Section 104 provides that the amendments made by Title I shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act and shall apply to any action or prosecution commenced on or after such effective date. Section 104 also provides that an action or prosecution commenced in state court and removed to Federal court shall be deemed to commence on the date the action or prosecution was commenced, within the meaning of state law, in state court.

## TITLE II--VENUE AND TRANSFER IMPROVEMENTS

## SEC. 201. SCOPE AND DEFINITIONS.

Section 201 adds a new section 1390 to chapter 87 of title 28, United States Code, to define the term "venue" and to specify two areas where the venue chapter would be inapplicable.

When venue is defined in terms of the geographical location where a civil action may appropriately be brought, venue is a relatively easy matter for a defendant to waive--either purposefully (by contract) or by inaction through the failure to raise the defense at the first available opportunity (*see* Fed. R. Civ. P. 12(b)(3) and 12(h)(1), making clear that defendants must raise the issue of venue in either the first motion or answer presented to the court in response to the complaint). If a defendant preserves the issue through a timely objection, district courts lack power to enter judgments against a defendant as to whom venue is improper. If the defendant fails to raise a venue defense and the court issues a judgment, the venue defense is waived.

Proposed subsection 1390(a) ("Venue Defined") would provide a general definition that distinguishes venue (a geographic specification of the appropriate forum for litigation) from other provisions of Federal law that operate as restrictions on subject-matter jurisdiction. Although such subject-matter restrictions may also include geographic terms, they differ from venue rules in that they may not be waived by the parties and will not be affected by changes in Chapter 87's general venue rules. Chapter 87's general rules also leave intact a variety of special provisions in various statutes that identify the proper forum for litigation of proceedings under specific acts of Congress. Some of these statutes have been interpreted as venue rules that may be waived by the parties, while others have been interpreted as restrictions on subject matter jurisdiction, which could not be waived.

Proposed subsection 1390(b) ("Exclusion of Certain Cases") would make clear that the general venue provisions do not apply to proceedings in admiralty. Presently, the only express provision that excludes admiralty cases from the general venue statutes that otherwise govern "any civil action" is included in Fed. R. Civ. P. 82, which specifies that an admiralty or maritime claim shall not be treated as a civil action for purposes of 28 U.S.C. $$§§1391-1392. In addition, subsection (b) would codify current case law (*see Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19 (1960)) to make clear that admiralty disputes would be subject to the general transfer provisions in 28 U.S.C. $$§§1404-1407.5

5

> *See generally ALI Project* at 154-157.

Proposed subsection 1390(c) ("Clarification Regarding Cases Removed from State Courts"), in keeping with current case law, would provide that the venue statutes do not determine the proper venue for a case removed from state court to a Federal district court.6 (The removal statute, 28 U.S.C. §§1441(a), makes venue proper in the Federal district court for the district in which the state court action was pending.) In addition, this subsection would maintain current practice by expressly providing that the transfer provisions of Chapter 87 would govern the transfer of a removed action as between districts and divisions of the Federal district courts once a case has been removed.7

6

> *See, e.g.,* Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665-66 (1953) (venue removed in cases is controlled by the removal statute, rather than the general venue statute); Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531 (6th Circ. 2002) (applying the *Polizzi* principle). *See also ALI Project* at 157-158.

7

> *See* Hollis v. Florida State University, 259 F.3d 1295, 1300 (11th Cir. 2001) (noting the availability of transfer following removal of a case to Federal court); Bentz v. Recile, 778 F.2d 1026, 1027-1028 (5th Cir. 1985) (permitting removal and transfer for convenience of the parties even where action was removed from a state court that may have lacked jurisdiction over the defendant).

Section 201(b) makes a conforming amendment in the table of sections for Chapter 87.

## SEC. 202. VENUE GENERALLY.

Section 202 of the bill replaces the text of the first four subsections of present section 1391, which govern venue generally.

*Application of Venue Requirements Generally (Proposed §§1391(a)(1))*

New paragraph 1391(a)(1) would follow current law in providing the general requirements for venue choices, but would not displace the special venue rules that govern under particular Federal statutes.8 A general venue statute may provide greater uniformity and lessen the need for special venue provisions in titles other than title 28.

8

> The ALI notes that there are over 200 specialized venue statutes in the United States Code. These specialized statutes would continue to govern within their respective fields, and the general venue statute would govern diversity and Federal question litigation outside these special areas. *See ALI Project* at 253-290.

*Abrogation of the "local action" rule (Proposed §§1391(a)(2), see also proposed section 203 of the bill)*

New paragraph 1391(a)(2) would end the use of the "local action" rule, which provides that certain kinds of actions pertaining to real property may be brought only in the district in which the property is located. Such actions, deemed "local," differ from the transitory actions that may be brought in any court with jurisdiction over the dispute and parties. The rule has primarily caused problems in disputes over suits for damages due to a trespass, because the district court may not be able to exercise personal jurisdiction over the defendant in the place where the property is located. Thus, in such situations, a plaintiff would not be able to pursue his or her case.

As noted in the *ALI Project,* "[t]he virtually unanimous view of modern opinion is that the local-action rule serves

no useful function as a device for allocating venue among the Federal courts. It is largely a creature of decisional law. . . ." *ALI Project* at 169. *See e.g., Bigio v. Coca-Cola,* 239 F.3d 440, 449-450 (2d Cir. 2000) (tracing local action rule to *Livingston v. Jefferson,* 15 Fed. Cas. 660 (C.C.D.Va. 1811)).

In light of the definition in subsection 1390(a), the phrasing of paragraph (a)(2), with its specific reference to "venue," makes it clear that statutory restrictions based on subject-matter jurisdiction would continue to apply.9

   9

        As noted in the *ALI Project,* new section 1391(a)(2)'s abrogation of the local-action rule would be subject to the qualification at the beginning of subsection (a) "[e]xcept as otherwise provided by law." *ALI Project* at 170-171.

*Establishing a unitary approach to venue; limiting venue in multiple-defendant cases to a district of the state in which all defendants reside; and clarifying the definition of "fallback" venue (Proposed §§1391(b)(1)-(3))*

Presently, subsection 1391(a) sets forth the venue requirements for actions brought in the Federal courts pursuant to diversity jurisdiction (28 U.S.C. §§1332). Subsection 1391(b) sets forth the venue requirements for actions brought in Federal court based on Federal question jurisdiction (28 U.S.C. §§1331). The provisions of subsections (a) and (b) in current law are identical, except with respect to the "fallback" provisions found in paragraphs 1391(a)(3) and (b)(3), which are used if "there is no other district in which the action may otherwise be brought."10 (As a practical matter, "fallback" venue applies primarily to claims that arise from conduct overseas.)

   10

        *See generally ALI Project* at 172-173 & nn.25, 27.

Many academics, as well as the ALI, have called for the elimination of the venue distinction between diversity and Federal question actions. New subsection 1391(b) responds to this call by establishing a single, unitary approach to venue rules that would govern actions brought in Federal court based on diversity or Federal question jurisdiction. It would preserve section 1391 as a general venue statute with provisions for venue based on the residence of the defendants, venue based on where the events giving rise to the action took place, and fallback venue.

New paragraph 1391(b)(1) would address a potential problem with the current statute. This subsection is intended to limit venue in multiple-defendant cases to a district of the state in which all defendants reside, and to address situations where one of the defendants in a multiple-defendant case is a corporation, which can be a resident for venue purposes in more than one state.

Presently, the language of paragraphs 1391(a)(1) and (b)(1) makes venue proper in "a judicial district where any defendant resides, if all defendants reside in the same State." Literally applied, this language could have unintended consequences. For example, consider a suit brought against both a resident (natural person) in Illinois and a corporation that does substantial business in every state, including Illinois, and the litigation arose from events that occurred in Illinois. Under current subsection 1391(c), the corporation could be considered a resident of Illinois and every other state, by virtue of its being subject to personal jurisdiction in all those states. A plaintiff might sue both defendants in any other district where the corporation happens to reside, such as the Southern District of New York, on the theory that, because all defendants reside in the same state (Illinois) as provided in 28 U.S.C. §§1391(a) and (b), venue is proper in any other district where "any defendant resides." Proposed paragraph 1391(b)(1) would alter the statutory language to preclude such a result, while achieving the intended goal of the original statute.

New paragraph 1391(b)(2) repeats without change the language now found in paragraphs 1391(a)(2) and 1391(b)(2).

New paragraph 1391(b)(3) would eliminate the differences in fallback venue currently found in paragraphs 1391(a)(3) and (b)(3). Paragraph 1391(a)(3) of title 28 provides that venue is proper in "a judicial district in which any defendant *is subject to personal jurisdiction* (emphasis added) at the time the action is commenced, if there is no district in which the action may otherwise be brought." Paragraph 1391(b)(3) provides that venue is proper in "a judicial district in which any defendant *may be found* (emphasis added), if there is no district in which the action may otherwise be brought." Paragraph 1391(a)(3) appears to refer to situations in which the district court may exercise long-arm jurisdiction over any defendant in the case. Although paragraph 1391(b)(3) appears to have been intended to reach the same result, the "may be found" language in that provision could be interpreted to refer to situations in which any defendant may be served with process in the district.11 Traditionally, the "may be found" formulation carried this service-of-process connotation, and some courts have interpreted "may be found" venue provisions from elsewhere in Federal law as meaning something other than service achieved through a long-arm statute. *See* C. Wright & M. Kane, *supra,* $S42, at 264 n.36.

11

    *See* John B. Oakley, *Prospectus for the American Law Institute's Federal Judicial Code Revision Project,* 31 U. C. Davis L. Rev. 855, 948 & n.404 (1998) (noting that the legislative history of the Judicial Improvements Act of 1990, *Pub. L. No. 101-650*, suggests that Congress intended no difference in the two formulations).

Although no cases have been identified that have adopted the narrower interpretation of paragraph (b)(3), there is little substantive justification for the present disparity in language between 1391(a)(3) and (b)(3), which could disrupt the intended operation of the venue statutes. Proposed paragraph 1391(b)(3) would eliminate this disparity and provide that an action may be brought in a judicial district in which any defendant is subject to the court's personal jurisdiction as to the action in question. The addition of the language "with respect to such action" is intended to avoid the possibility of an overly broad assertion of venue.

*Venue Rules Applicable Universally (Proposed $S1391(c))*

Under section 202 of the bill, proposed subsection 1391(c) would apply to all venue statutes, including venue provisions that appear elsewhere in the United States Code. It defines residency for natural persons, incorporated and unincorporated entities, and also provides a rule for nonresident defendants. This would replace current subsection 1391(c), which applies only to corporations as defendants, and only for purposes of venue under Chapter 87.

*Clarifying "residence" of natural persons for venue purposes (Proposed $S1391(c)(1))*

Under current paragraphs 1391(a)(1) and (b)(1), venue in a suit against a natural person may lie in a district where the defendant "resides." Most courts have interpreted the term "resides" as a reference to the party's domicile,12 borrowing the approach that governs the determination of citizenship for purposes of diversity of citizenship jurisdiction.13 However, a minority of appellate courts (the Second, Ninth, and Tenth Circuits) have interpreted residence as a possibly broader concept than citizenship and have permitted a defendant to be considered a resident in a state and district other than that person's state of domicile.14 Such a reading might permit a court to find venue to be proper in a place where a party has a summer home.

12

    Domicile is defined as the place where a person has his or her true, fixed, and permanent home and principal establishment. *See* Black's Law Dictionary (8th ed. 2004).

13

    *See* 15 Wright & Miller, Federal Practice and Procedure: Jurisdiction and Related Matters at 33-37 (2d. ed. 1986).

14

 *See, e.g.,* Arley v. United Pac. Ins. Co., 379 F.2d 183, 185, n.1 (9th Cir. 1967); cf. Townsend v. Bucyrus-Erie Co., 144 F.2d 106, 108 (10th Cir. 1944) (noting that residence for venue purposes does not necessarily conform to citizenship for diversity purposes). *See generally ALI Project* at 178-182.

 Paragraph 1391(c)(1) would provide that, for venue purposes, a natural person would be deemed to reside in the judicial district in which that person is domiciled, thereby resolving the division of authority regarding the residence of parties by adopting the majority rule. As noted in the *ALI Project,* proposed new paragraph 1391(c)(1)--

 conforms . . . to the great bulk of precedent, by expressly limiting party-based venue in suits against individuals to the district or (in a multi-defendant case) the state in which the defendant is domiciled. This strict definition of residence for venue purposes in suits against individuals means that any plaintiff desiring to sue multiple individuals not domiciled in the same state will have to bring suit in a claim-based venue [where the events or omissions giving rise to the claim occurred] . . . rather than in a party-based venue. . . .15

15

 *See ALI Project* at 182.

*Venue for unincorporated associations (Proposed §§1391(c)(2))*

 The Supreme Court's decision in *Denver & Rio Grande W. R. Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556 (1967), has produced a division in authority as to the venue treatment of unincorporated associations. There, the Court ruled that unions were to be treated like corporations for Federal venue purposes, and thus subject to venue where they were licensed to do business or where they were doing business. The venue treatment of corporations changed in 1988 with the adoption of 28 U.S.C. §§1391(c), which provides that corporations will be regarded as residents of any district in which they are subject to personal jurisdiction. Some courts apply this newer rule to unions; others continue to apply the *Denver & Rio Grande* venue rule to unincorporated associations. These courts take the position that the 1988 modification of the statutory rule for *corporate* venue did not change the treatment of venue for *unincorporated associations* that had been applied previously in *Denver & Rio Grande.*

 New paragraph 1391(c)(2) in section 202 of the bill would restore the parity of treatment contemplated in *Denver & Rio Grande.* The provision would deem a corporation, an unincorporated association, and any other entity that has the right to sue and be sued in its common name, if a defendant, to be a resident in any judicial district in which the defendant is subject to the court's personal jurisdiction as to the civil action in question, and, if a plaintiff, only in the judicial district in which it maintains its principal place of business. As a general matter, the same rule would apply to limited partnerships and corporations (LLPs and LLCs), entities that normally have the capacity to sue in their common name under the law governing their organization.

 This clarifies current law by expressly making the deeming provision applicable to unincorporated associations, such as partnerships and labor unions, and other entities with capacity to sue in their common name under applicable law. Under Fed. R. Civ. P. 17(b), corporate capacity to sue depends on the law governing the corporation's organization. With respect to entities other than corporations, capacity to sue in a common name depends on the law of the state in which the district court is located, except that partnerships and unincorporated associations that lack capacity under state law may sue or be sued in their common name for the purposes of enforcing substantive Federal rights.

 For the cases in which other laws provide that venue may be based on the residence of the plaintiff, this proposed amendment to the venue statute would treat a plaintiff capable of suing in its common name as a resident only of the district in which it has its principal place of business. This section would follow the *ALI Project* in slightly narrowing venue options for plaintiffs suing in a common name, in keeping with the trend to move away from plaintiff-based venue and focus on the convenience of defendants.

*Clarifying venue for those residing outside the U.S.; granting venue defense to permanent resident aliens with a domicile in the U.S. (Proposed §S1391(c)(3))*

Subsection 1391(d) of title 28 currently provides that an alien may be sued in any district, thus denying an alien the ability to raise venue as a defense to the location of litigation. As noted in the *ALI Project,* the current statute means that the "presence of an alien defendant is disregarded in the application of the venue statutes to any co-defendants who are not aliens." *ALI Project* at 199.

As provided in section 202, the first clause of proposed paragraph 1391(c)(3) would change venue law by shifting the focus from "alienage" of a defendant to whether the defendant has his or her "residence" outside the United States. It means that for a party resident abroad, whether a natural person or a corporation, any venue privilege against suit in a particular Federal district court would be eliminated, and the protection of the defendant from being sued in an inappropriate forum would be dependent upon whether the defendant was subject to personal jurisdiction in that district and to potential transfer under subsection 1404(a) of title 28.

This would mean that aliens *and* United States citizens domiciled abroad could not claim a venue defense to the location of litigation. Prohibiting United States citizens domiciled abroad from raising a venue defense would be a change in current law. They could, however, continue to object to personal jurisdiction in the courts of the United States, as could aliens. (A natural person is deemed by paragraph 1391(c)(1) to reside where domiciled, and thus such a defendant could be a nonresident for venue purposes and still be subject to personal jurisdiction as a defendant in a Federal district court.) This approach is consistent with that suggested by the ALI as far back as 1969 when it proposed dropping the emphasis on *alienage* and applying the same rule to all natural persons with a domicile abroad.

The second clause of proposed paragraph 1391(c)(3) would make it clear that defendants that reside outside the United States shall be disregarded for purposes of determining the appropriate place for bringing an action as to other resident defendants. (This continues the present practice of disregarding aliens and extends that practice to other defendants who reside outside the United States.) The requirement that courts disregard non-resident defendants in determining venue should alleviate the possibility that district courts will view the presence of such parties as a bar to the transfer of actions to a more convenient forum.

In keeping with the consistent focus of determining venue by reference to the domicile of natural persons, the deletion of the current language of 28 U.S.C. §S1391(d), combined with the proposed amendment to paragraph 1391(c)(1), would also permit permanent resident aliens domiciled in the United States to raise a venue defense.16 As noted above, aliens may not claim a venue defense under current law. This is true even if the alien has been admitted for immigration purposes as a permanent resident of the United States and has established a domicile here. The proposed statute would grant a venue defense to permanent resident aliens who are domiciled in the United States. (At present, 28 U.S.C. §S1332(a) recognizes that permanent resident aliens may be viewed as citizens of their state of domicile for certain jurisdictional purposes, although section 101 of the bill would modify the terms of that provision to better achieve its intended purpose.) As noted in the *ALI Project,* "it makes little sense to assimilate permanent resident aliens domiciled in a state to United States citizens domiciled in a state for purposes of subject matter jurisdiction but not for purposes of venue." *ALI Project* at 201. New paragraph 1391(c)(3) would address this problem.

16

    An alien can obtain a "lawful domicile" in the United States only if he or she has the ability under the immigration laws to form the intent to remain in this country indefinitely. *See* Castellon-Contreras v. INS, 45 F.3d 149 (7th Cir. 1995); Madrid-Tavarez v. INS, 999 F.2d 111 (5th Cir. 1993). Such an interpretation of domicile under the venue statute as including lawful intent to remain would foreclose the possibility that an undocumented alien would be regarded as a domiciliary of the United States for venue purposes.

*Retaining district-specific venue (Proposed §S1391(d))*

The language of proposed subsection 1391(d) is identical to that currently included in the second sentence of subsection 1391(c), with the addition of the language "for purposes of venue under this chapter" from the first sentence of the current subsection. Lastly, section 202 of the bill inserts subsection headings for subsections 1391(e), (f), and (g).

## SEC. 203. REPEAL OF SECTION 1392.

28 U.S.C. §§1392 provides that "[a]ny civil action, of a local nature, involving property located in different districts in the same State, may be brought in any of such districts." Because proposed paragraph 1391(a)(2) would abolish the local-action rule, section 1392 is repealed as unnecessary.

## SEC. 204. CHANGE OF VENUE.

Subsection 1404(a) of title 28 authorizes the transfer of civil actions for the convenience of the parties and witnesses and in the interest of justice, but it limits the transfer of an action to those districts "where [the action] might have been brought." The Supreme Court has interpreted this language to require that the transferee district be one in which both venue and personal jurisdiction are proper.17 This interpretation, however, narrows the range of possible transferee districts and precludes a transfer of the case to a district where it might be more convenient to the litigants.

17

*See* Hoffman v. Blaski, 363 U.S. 335 (1960).

In addition to the existing authority to transfer a civil action to a district or division where it might have been brought," the proposed amendment to subsection 1404(a) would permit an action to be transferred to any district or division to which all parties have consented, even if the action could not have been brought in that district or division originally. Under the proposed amendment, such transfers would only be possible where all parties agreed and only if the court found it to be for the convenience of the parties and witnesses and in the interest of justice. Such mutually agreed upon and judicially approved transfers would be proper in any action, including actions that have been centralized for pre-trial proceedings by the Judicial Panel on Multidistrict Litigation under 28 U.S.C. §§1407.

In authorizing such transfers upon the parties' consent, this proposed change to subsection 1404(a) would also require a corresponding change in existing subsection 1404(d) to clarify that the amendment to subsection 1404(a) is not intended to allow the transfer of an action from an Article III district court to a territorial district court that lacks Article III status. The proposed change would preclude a transfer from an Article III district court to the district courts of Guam, the Northern Mariana Islands, and the Virgin Islands. The specific bar of such transfers will prevent possible constitutional issues from arising.

## SEC. 205. EFFECTIVE DATE.

This section provides that the amendments made by Title II would take effect upon the expiration of the 30-day period beginning on the date of enactment and would apply to any action commenced on or after such date. In addition, it clarifies the treatment of cases commenced in state court and removed to Federal court.

### Changes in Existing Law Made by the Bill, as Reported

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

## TITLE 28, UNITED STATES CODE

## PART IV--JURISDICTION AND VENUE

**CHAPTER 85--DISTRICT COURTS; JURISDICTION**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

(1) * * *

(2) citizens of a State and citizens or subjects of a foreign state, *except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State*;

{D> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled. <D}

(c) For the purposes of this section and section 1441 of this title--

(1) a corporation shall be deemed to be a citizen of {D> any State <D} *every State and foreign state* by which it has been incorporated and of {D> the State <D} *the State or foreign state* where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, {D> such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and <D} *such insurer shall be deemed a citizen of--*

*(A) every State and foreign state of which the insured is a citizen;*

*(B) every State and foreign state by which the insurer has been incorporated; and*

*(C) the State or foreign state where the insurer has its principal place of business; and*

**CHAPTER 87--DISTRICT COURTS; VENUE**

Sec.

1390. Scope.

1391. Venue generally.

{D> 1392. Defendants or property in different districts in same State. <D}

(a) VENUE DEFINED.--As used in this chapter, the term "venue" refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general, and does not refer to any grant or restriction of subject-matter jurisdiction providing for a civil action to be adjudicated only by the district court for a particular district or districts.

(b) EXCLUSION OF CERTAIN CASES.--Except as otherwise provided by law, this chapter shall not govern the venue of a civil action in which the district court exercises the jurisdiction conferred by section 1333, except that such civil actions may be transferred between district courts as provided in this chapter.

(c) CLARIFICATION REGARDING CASES REMOVED FROM STATE COURTS.--This chapter shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts.

{D> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise

provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State,(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

{D> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

{D> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and,if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

{D> (d) An alien may be sued in any district. <D}

(a) APPLICABILITY OF SECTION.--Except as otherwise provided by law--

(1) this section shall govern the venue of all civil actions brought in district courts of the United States; and

(2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.

(b) VENUE IN GENERAL.--A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

(c) RESIDENCY.--For all venue purposes--

(1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled;

(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and

(3) a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

(d) RESIDENCY OF CORPORATIONS IN STATES WITH MULTIPLE DISTRICTS.--For purposes of venue

under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

{D> (e) A civil action <D} *(e)*ACTIONS WHERE DEFENDANT IS OFFICER OR EMPLOYEE OF THE UNITED STATES.--

*(1)*IN GENERAL.--*A civil action* in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which {D> (1) <D} *(A)* a defendant in the action resides, {D> (2) <D} *(B)* a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or {D> (3) <D} *(C)* the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees,or agencies were not a party.

{D> The summons and complaint <D} *(2)*SERVICE.--*The summons and complaint* in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

{D> (f) A civil action <D} *(f)*CIVIL ACTIONS AGAINST A FOREIGN STATE.--*A civil action* against a foreign state as defined in section 1603(a) of this title may be brought--

(1) * * *

{D> (g) A civil action <D} *(g)*MULTIPARTY, MULTIFORUM LITIGATION.--*A civil action* in which jurisdiction of the district court is based upon section 1369 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.

{D> Any civil action, of a local nature, involving property located in different districts in the same State, may be brought in any of such districts. <D}

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought *or to any district or division to which all parties have consented.*

(d) {D> As used in this section, <D} *Transfers from a district court of the United States to the District Court of Guam, the District Court for the Northern Mariana Islands, or the District Court of the Virgin Islands shall not be permitted under this section. As otherwise used in this section,* the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

## CHAPTER 89--DISTRICT COURTS; REMOVAL OF CASES FROM STATE COURTS

Sec.

1441. {D> Actions removable generally <D} *Removal of civil actions.*

1446. Procedure for removal *of civil actions.*

1454. Procedure for removal of criminal prosecutions.

{D> (a) Except <D} *(a)*GENERALLY.--*Except* as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. {D> For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded. <D}

{D> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

{D> (c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates. <D}

(b) REMOVAL BASED ON DIVERSITY OF CITIZENSHIP.--(1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.

(2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) JOINDER OF FEDERAL LAW CLAIMS AND STATE LAW CLAIMS.--(1) If a civil action includes--

(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

{D> (d) Any <D} *(d)*ACTIONS AGAINST FOREIGN STATES.--*Any* civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

{D> (e)(1) Notwithstanding <D} *(e)*MULTIPARTY, MULTIFORUM JURISDICTION.--*(1) Notwithstanding* the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if--

(A) * * *

{D> (f) The court <D} *(f)* DERIVATIVE REMOVAL JURISDICTION.--*The court* to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

{D> (a) A defendant <D} *(a)* GENERALLY.--*A defendant* or defendants desiring to remove any civil action {D> or criminal prosecution <D} from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

{D> (b) The notice <D} *(b)* REQUIREMENTS; GENERALLY.--*(1) The notice* of removal of a civil action or proceeding shall be filed within {D> thirty <D} *30* days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within {D> thirty <D} *30* days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

{D> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action. <D}

(2)(A) When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

(B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

(C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

(3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

{D> (c)(1) A notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

{D> (2) A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds which exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

{D> (3) The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

{D> (4) The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

{D> (5) If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and after such hearing shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further. <D}

(c) REQUIREMENTS; REMOVAL BASED ON DIVERSITY OF CITIZENSHIP.--(1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

(2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--

(A) the notice of removal may assert the amount in controversy if the initial pleading seeks--

(i) nonmonetary relief; or

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

(3)(A) If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

(B) If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

{D> (d) Promptly <D} *(d)* NOTICE TO ADVERSE PARTIES AND STATE COURT.--*Promptly* after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

{D> (e) If the defendant or defendants are in actual custody on process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or defendants into his custody and deliver a copy of the writ to the clerk of such State court. <D}

{D> (f) With respect <D} *(e)*COUNTERCLAIM IN 337 PROCEEDING.--*With respect* to any counterclaim removed to a district court pursuant to section 337(c) of the Tariff Act of 1930, the district court shall resolve such counterclaim in the same manner as an original complaint under the Federal Rules of Civil Procedure, except that the payment of a filing fee shall not be required in such cases and the counterclaim shall relate back to the date of the original complaint in the proceeding before the International Trade Commission under section 337 of that Act.

(a) * * *

(b) IN GENERAL.--A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section {D> 1446(b) <D} *1446(c)(1)* shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

(a) NOTICE OF REMOVAL.--A defendant or defendants desiring to remove any criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) REQUIREMENTS.--(1) A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

(2) A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds that exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

(3) The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

(4) The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

(5) If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

(c) WRIT OF HABEAS CORPUS.--If the defendant or defendants are in actual custody on process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or defendants into the marshal's custody and deliver a copy of the writ to the clerk of such State court.

**SUBJECT:** JURISDICTION (90%); US FEDERAL GOVERNMENT (79%); LEGISLATIVE BODIES (79%); LAW COURTS & TRIBUNALS (79%); INSURANCE (59%); IMMIGRATION (59%); SUITS & CLAIMS (59%); LAW SCHOOLS (59%); BUSINESS & PROFESSIONAL ASSOCIATIONS (59%); LIABILITY INSURANCE (59%); BUDGET (59%); GOVERNMENT BUDGETS (59%)

**LOAD-DATE:** February 28, 2011