IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES E. MOORE, *et ux.*,

    *Plaintiffs*,

v.

ROBERT S. SVEHLAK, *et al.*,

    *Defendants*.

Civil Action No. ELH-12-2727

**MEMORANDUM OPINION**

This case concerns removal procedure from state to federal court following the enactment of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "JVCA"), Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011).

On or about May 30, 2012, Charles and Felicia Moore, plaintiffs, filed suit in the Circuit Court for Baltimore City against twenty-eight defendants, asserting a variety of claims in connection with an alleged "hard money lending scam" involving "fraudulent real estate and debt collection practices." Complaint ¶ 1 (ECF 2). The thirty-count Complaint includes federal claims under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, as well as various Maryland statutory and common law causes of action, including claims of fraud and claims to quiet title to four parcels of real property. The defendants are Imagine Capital, Inc. ("Imagine Capital"); Robert Svehlak; Beverly Svehlak; Neil Roseman; Lead Probe, Inc. ("Lead Probe"); and Boomerang Properties, LLC ("Boomerang") (collectively, the "Imagine Defendants"); the King Title Company and David Pierce (collectively, the "King Defendants"); Stonegate Title Company; Robert Brendel; Cynthia Brendel; Robert C. Brendel, P.A.; Ronald Katz; and Ronald B. Katz, P.A. (collectively, the "Stonegate Defendants"); Holderness, Menchel & Alter, LLC; Holderness & Associates,

LLC; and James Holderness (collectively, the "Holdness Defendants"); Granite Finance, LLC; Granite Partners, LLC; Granite Development, LLC; and Michael Walsh (collectively, the "Granite Defendants"); E & W Realty, LLC and Katheryn Jewell (collectively, "E&W Defendants"); Cardinal Financial Company L.P. ("Cardinal"); Stephanie Mballa; B. Sean Radin; Wells Fargo Bank, N.A. ("Wells Fargo"); and ETS Maryland, LLC ("ETS Maryland").

On September 12, 2012, the Imagine Defendants and the King Defendants (collectively, the "Removing Defendants") jointly filed a Notice of Removal (ECF 1), by which they removed the action to federal court on the basis of federal question jurisdiction, *see* 28 U.S.C. §§ 1331, 1441, and federal civil rights removal jurisdiction, *see* 28 U.S.C. § 1443. The Removing Defendants represented that seven other defendants who had been served "expressed their consent . . . to removal." Notice of Removal ¶ 3. They also asserted: "Upon information and belief there are no other served defendants necessary for removal." *Id.* Most, but not all, of the other defendants subsequently filed notices in this Court purporting to consent to removal.

On October 12, 2012, plaintiffs filed a timely Motion to Remand ("Motion") (ECF 78), which has been fully briefed by the parties.[1] *See* 28 U.S.C. § 1447(c) (providing that a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal"). No hearing is necessary to

---

[1] In an Order dated October 5, 2012 (ECF 76), I designated the Imagine Defendants as lead defendants for purposes of the Motion, and provided that, after the Imagine Defendants filed their opposition to the Motion, any other defendant would be permitted, but not required, to file an additional opposition. I stated that I would assume that any defendant that did not file a separate opposition joined in the Imagine Defendants' opposition. The Imagine Defendants filed an Opposition (ECF 83), and plaintiffs filed a Reply (ECF 84).

None of the other defendants filed separate submissions in regard to the Motion. However, several defendants filed motions to dismiss, *see* ECF 21, 22, 29, 35, 37, 38, 72, 75, and the Imagine Defendants, King Defendants, and Stonegate Defendants filed a motion to strike plaintiffs' demand for a jury trial. *See* ECF 40. These motions were administratively terminated, pending resolution of the Motion to Remand, without prejudice to renewal either in this Court or state court, depending on the outcome of the Motion to Remand. *See* ECF 76 & ECF 80.

resolve the matters at issue.  *See* Local Rule 105.6.  For the reasons that follow, I conclude that removal was improper.  Accordingly, I will grant the Motion and remand the suit to the Circuit Court for Baltimore City.

## Background

For purposes of this Memorandum Opinion, it is unnecessary to recount fully the allegations of plaintiffs' Complaint.  In summary, their claims arise out of a $200,000 loan from Imagine Capital to Mr. Moore, for the purpose of rehabilitating two residential properties in Baltimore City owned by Mr. Moore.  *See* Complaint ¶¶ 2-3.  Mr. and Ms. Moore both executed personal guaranties of the loan obligation.  *See id.* ¶¶ 3-4.  According to plaintiffs, the terms of the loan agreement required Imagine Capital to place $145,000 of the total $200,000 in a "Construction Trust Escrow Account," but Imagine Capital failed to do so.  *Id.* ¶¶ 4-5.  As a result, Mr. Moore was unable to complete the rehabilitation projects and incurred substantial losses.  *Id.* ¶ 7.  Moreover, despite Imagine Capital's noncompliance with its obligations under the loan agreement, Imagine Capital allegedly utilized confessed judgment provisions, or "cognovits," contained in the loan instruments and guaranties to obtain fraudulent judgments against the Moores.  *See id.* ¶¶ 8-10.  Through its "misuse" of the "fraudulently-obtained confessed judgments," Imagine Capital allegedly "leverag[ed] [Mr. Moore] to convey a secured property to a related firm of Imagine Capital," and damaged the Moores' credit, resulting in the foreclosure of the Moores' principal residence.  *Id.* ¶¶ 9-11.  Plaintiffs charge that each of the defendants, other than Wells Fargo and ETS Maryland, played some role in Imagine Capital's alleged fraudulent scheme.  As to Wells Fargo and ETS Maryland, plaintiffs have sued them "only for the purposes of quieting title in real property."  *Id.* ¶ 1.

As noted, plaintiffs filed suit in State court on or about May 30, 2012, and the Removing Defendants removed the case to this Court on September 12, 2012. In the Notice of Removal, they asserted that, as of the date of removal, the state court's records reflected that all of the Imagine Defendants (other than Lead Probe and Mr. Roseman) had been served with a summons and a copy of the Complaint, as had all of the Stonegate Defendants, Cardinal, Ms. Mballa, Wells Fargo, and ETS Maryland. Notice of Removal ¶ 1. However, they did not indicate the specific dates of service. The Removing Defendants represented that Cardinal and the Stonegate Defendants consented to removal and asserted that there were "no other served defendants necessary for removal." Notice of Removal ¶ 3.

The day after the case was removed, this Court issued its Standing Order Concerning Removal (ECF 14), which directs a party removing an action to this Court to provide certain information regarding the removal, including the "date(s) on which each defendant was served with a copy of the summons and complaint"; the "reasons why removal has taken place at this time" if "removal takes place more than thirty (30) days after any defendant was first served with a copy of the summons and complaint"; and "[i]dentification of any defendant who was served in the state court action prior to the time of removal who did not formally join in the notice of removal and the reasons why such defendant did not join." *Id.* ¶¶ 1, 3, 5. On September 20, 2012, I issued an Order (ECF 43) directing the Removing Defendants to address two additional matters in their response to the Standing Order: (1) whether all of plaintiffs' state law claims came within the Court's supplemental jurisdiction under 28 U.S.C. § 1367; and (2) clarification of the basis for the removing defendants' "apparent assertion that the consent of all served defendants is not 'necessary for removal.'"

In the meantime, plaintiffs voluntarily dismissed their claims against Mr. Radin. *See* ECF 50 & ECF 81. With the exception of ETS Maryland, all other defendants filed notices of consent to removal. *See* ECF 13 (Stonegate Defendants); ECF 15 (E & W Defendants); ECF 24 (Cardinal); ECF 49 (Wells Fargo); ECF 52 (Ms. Mballa); ECF 54 & ECF 61 (Granite Defendants); ECF 64 (Holderness Defendants).[2] ETS Maryland has never filed a consent.

On September 27, 2012, the Removing Defendants filed their Response to the Standing Order (ECF 65), in which they provided a chart setting out the dates, as applicable, that each defendant had been served and had consented to removal. The chart stated that all of the Imagine Defendants (other than Lead Probe and Mr. Roseman) were served on August 13, 2012. The Stonegate Defendants, Wells Fargo, and the Granite Defendants (other than Mr. Walsh) were each served sometime before August 13, 2012. The King Defendants, Cardinal, Ms. Mballa, and ETS Maryland were each served at some point between August 13, 2012, and September 12, 2012, the date that the action was removed to federal court.[3] Mr. Walsh was not served until September 27, 2012, *i.e.*, after removal; he filed his consent one day later. And, defendants asserted that Lead Probe, Mr. Roseman, the E & W Defendants, and the Holderness Defendants were never served.[4]

The Removing Defendants also summarized the dates on which each applicable defendant had filed a consent to removal. Of import here, the Stonegate Defendants, Wells

---

[2] The Stonegate Defendants and Cardinal filed notices of consent to removal notwithstanding that the Removing Defendants had already represented in the Notice of Removal that they consented.

[3] In particular, ETS Maryland was served on August 14, 2012; Ms. Mballa was served on August 15; the King Defendants were served on August 23; and Cardinal was served on September 10.

[4] Because plaintiffs voluntarily dismissed their claims against Mr. Radin, the Removing Defendants did not indicate the date, if any, that he was served. In any event, Mr. Radin never filed a consent to removal.

Fargo, Ms. Mballa, and the Granite Defendants (other than Mr. Walsh) each filed notice of consent to removal more than thirty days after being served. The Holderness Defendants were the last defendants to consent to removal; on September 27, 2012, they filed a "Notice Joining in the Petition for Removal" (ECF 64), in which they "incorporated by reference" the Removing Defendants' Notice of Removal and stated: "Upon information and belief, all parties to the case have formally consented to removal, with the exception of ETS Maryland LLC, which is not a party required to consent pursuant to 28 U.S.C. § 1441(c)(2) and which is not a proper party in this action."

In addition, the Removing Defendants asserted that all of plaintiffs' state law claims come within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). With some exceptions, § 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the district courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, the Removing Defendants' assertion of original jurisdiction was based on federal question jurisdiction as to plaintiffs' federal law claims, pursuant to 28 U.S.C. § 1331, removal of which is authorized by 28 U.S.C. § 1441. Because § 1331 would not provide original jurisdiction with respect to plaintiffs' state law claims, the state law claims would need to "form part of the same case or controversy" as the federal claims, within the meaning of 28 U.S.C. § 1367(a), in order for the Court to exercise jurisdiction over them.[5]

According to the Removing Defendants, the state law claims form part of the same case or controversy as the federal claims. They also contended that the consent of all defendants was not necessary in order to remove the case. Relying on the recently enacted JVCA, they claimed

---

[5] As noted, the Removing Defendants also asserted removal jurisdiction under 28 U.S.C. § 1443. As I will explain, *infra*, § 1443 does not apply to this case.

- 6 -

that only the defendants against whom federal claims were asserted were required to consent to removal; consent to removal was not necessary from defendants against whom only state law claims were asserted. In this case, plaintiffs asserted only state law claims against Wells Fargo, ETS Maryland, Ms. Mballa, and the Granite Defendants (collectively, the "State Law Defendants"). Nevertheless, the Removing Defendants pointed out that all of the State Law Defendants had, in fact, consented to removal, with the exception of ETS Maryland. And, as to ETS Maryland, the Removing Defendants asserted that it was "not a proper party in this case." ECF 65 at 2.

Additional facts are included in the Discussion.

## Discussion

"[F]ederal courts are courts of limited jurisdiction, [and] should construe removal statutes narrowly, [with] any doubts . . . resolved in favor of state court jurisdiction." *Barbour v. Int'l Union*, 640 F.3d 599, 617 (4th Cir. 2011) (en banc) (abrogated in part on other grounds by the JVCA). In their Motion, plaintiffs assert that removal here violates one of the important procedural limitations on defendants' right of removal: the "rule of unanimity," embodied in 28 U.S.C. § 1446(b)(2)(A).[6] As amended by the JVCA, § 1446(b)(2)(A) provides: "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."[7] Plaintiffs argue that removal

---

[6] Non-compliance with the rule of unanimity is a waivable "error in the removal process," rather than a defect in subject matter jurisdiction. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006). Although the rule is waivable, plaintiffs did not waive it. Rather, they preserved their objection to non-unanimous removal by timely moving to remand on that basis. *See* 28 U.S.C. § 1447(c) (establishing 30-day time period in which to move to remand on non-jurisdictional grounds).

[7] Although the amendments to § 1446 enacted by the JVCA only recently made the rule of unanimity explicit, the statute had long been understood to contain an implicit requirement of unanimous consent to removal. *See Mayo v. Bd. of Educ. of Prince George's County*, 713 F.3d

was improper because some of the served defendants failed to join or consent to removal on a timely basis, and ETS Maryland never consented to removal.[8]

Defendants posit five arguments in response, which I have reordered for purposes of discussion. First, defendants contend that this case is not governed by the rule of unanimity under 28 U.S.C. § 1446(b)(2)(A), because that rule applies only "[w]hen a civil action is removed *solely* under [28 U.S.C. §] 1441(a)." (Emphasis added). Given that defendants also invoked the civil rights removal statute, 28 U.S.C. § 1443, in their Notice of Removal, they contend that the rule of unanimity does not apply to this action. Second, defendants maintain that, pursuant to 28 U.S.C. § 1441(c), consent was only required from the defendants against whom federal claims were asserted, and all of those defendants who had been served at the time of removal consented to the removal. Third, even if the State Law Defendants' consent to removal was required, defendants argue that they all eventually filed effective consents, except ETS Maryland. Fourth, defendants contend that the Holderness Defendants' "Notice Joining in the Petition for Removal" was sufficient to cure any defect in removal as to any defendants other than ETS Maryland, because it incorporated by reference the original Notice of Removal and expressly asserted that all defendants other than ETS Maryland consented. Finally, as to ETS Maryland, defendants argue that its consent to removal is not required, because ETS Maryland is only a "nominal defendant." I address these arguments in turn.

---

735, 740-41 & n.1 (4th Cir. 2013) (applying rule of unanimity from pre-JVCA case law including, *inter alia*, *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 248 (1900), and noting that "the statute now explicitly requires consent"). In any event, because this case was commenced in state court in May 2012, after the JVCA's effective date, this case is governed by the statute as amended by the JVCA. *See* JVCA, § 105 (providing that the JVCA applies to any action commenced in state court 30 days or more after the JVCA's date of enactment, *i.e.*, December 7, 2011, and subsequently removed to federal court).

[8] Although Mr. Radin did not file a written consent to removal before plaintiffs voluntarily dismissed their claims against him, plaintiffs do not argue that Mr. Radin's lack of consent violates the rule of unanimity.

<u>A. Whether the Rule of Unanimity Applies</u>

As noted, the rule of unanimity embodied in 28 U.S.C. § 1446(b)(2)(A) is limited, by its terms, to actions "removed *solely* under [28 U.S.C. §] 1441(a)." (Emphasis added). In turn, § 1441(a) provides for removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." However, "[s]ome federal statutes authorize removal even when no statutory grant of [original] jurisdiction to the federal courts permits an identical suit to be commenced there." Wright, Miller, Cooper & Steinman, 14B Federal Practice & Procedure § 3721, at 19 (4th ed. 2009, 2013 Supp.) ("Wright & Miller"). The civil rights removal statute, 28 U.S.C. § 1443, is one such statute.

Section 1443 provides:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

Defendants' apparent position is that removal is authorized under § 1443 because plaintiffs' Complaint "alleges acts in violation of the plaintiffs' civil rights." Notice of Removal ¶ 2.[9] This position is incorrect.

As the Wright & Miller treatise explains, the Supreme Court has adopted a "very narrow reading of Section 1443," which "has remained stable over many years." 14C Wright & Miller § 3727, at 302. According to the Supreme Court, removal under subsection (1) of

---

[9] Defendants do not elucidate this argument in their Opposition to the Motion. *See* Opposition at 10.

§ 1443 is "warranted only if there is a solid basis for predicting that the *defendant's* civil rights will be denied in the state court. The prediction must come from 'reference to a law of general application'—a state statute or the state constitution—that denies the defendant's civil rights," rather than "illegal [ ]or corrupt acts of individual state officials" or "the mere possibility of an unfair trial in state court." *Id.* at 291-93 (quoting *Georgia v. Rachel*, 384 U.S. 780, 800 (1966)) (emphasis added) (footnotes omitted). Moreover, the Supreme Court has "interpreted the first portion of subsection (2) of the statute to apply only to federal officers or agents and those authorized to act with or for them in affirmatively executing duties under a federal law providing for equal civil rights." 14C WRIGHT & MILLER § 3727, at 299 (citing *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966)). And, "[w]ith respect to the second portion of Section 1443(2), 'for refusing to do any act on the ground that it would be inconsistent with such [civil rights] law,' the Supreme Court [has] concluded that 'it is clear that removal under that language is available only to state officers.'" 14C WRIGHT & MILLER § 3727, at 300 (footnotes omitted) (quoting *Peacock*, 384 U.S. at 824 n.22).

Defendants have not alleged that litigation in state court will result in denial of their *own* constitutional rights, so as to come within § 1443(1). Rather, removal is grounded on the *plaintiffs*' allegation that defendants violated *plaintiffs*' federal civil rights. Moreover, none of the defendants is a federal officer or a state officer, or an agent of such an officer, so as to come within § 1443(2). Indeed, looking to the plain language of § 1443(2), there is no claim in this suit that defendants performed some act "under color of authority derived from any law providing for equal rights," or that they "refus[ed] to do any act on the ground that it would be inconsistent with such law." Rather, plaintiffs' claim is that defendants' acts denied *plaintiffs*' federal civil rights. Such a claim is not removable under § 1443.

Further, plaintiffs' civil rights claim under 42 U.S.C. § 1983, contained in Count Six of the Complaint, asserts that certain defendants "concocted an elaborate scheme to deprive the Moores . . . of their rights to Due Process under the 14th Amendment of the U.S. Constitution." Complaint ¶ 283. An allegation of due process violation under § 1983 is outside the rubric of removal under § 1443 for an additional reason. As the Supreme Court explained in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600 (1979):

> "§ 1443 'applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights . . . .' 'When the removal statute speaks of "any law providing for equal rights," it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes [*i.e.*, the Reconstruction-era Civil Rights Acts and the Civil Rights Acts of the 1950s and 60s], *as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.*'"

*Id.* at 622 (quoting *Rachel*, 384 U.S. at 792) (internal citations omitted) (emphasis added).

Certainly, plaintiffs' claim under § 1983 is removable under 28 U.S.C. § 1441(a), pursuant to the grant of federal question jurisdiction in 28 U.S.C. § 1331. *See, e.g.*, *Butler v. Sheriff of Palm Beach County*, 685 F.3d 1261, 1264 (11th Cir. 2012) (stating that defendants "removed the case to federal district court, *see* 28 U.S.C. § 1441(a), based on federal question jurisdiction, *see id.* § 1331, which was premised on the § 1983 claims"). But, § 1443 does not authorize the removal of this action to federal court. Therefore, pursuant to 28 U.S.C. § 1446(b)(2)(A), removal is based "solely under [28 U.S.C. §] 1441(a)," and the rule of unanimity applies.

### B.  Whether the Consent to Removal of the State Law Defendants is Required

Defendants argue that the rule of unanimity applies only to the defendants against whom federal claims have been brought, and therefore the State Law Defendants are not required to consent.  This argument is based on 28 U.S.C. § 1441(c), a statutory provision that was

completely revised by the JVCA. Defendants' position is based on a misapprehension of the statute.

As revised by the JVCA, section 1441(c) provides:

(1) If a civil action includes—

(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of [28 U.S.C. §] 1331 . . . ), and

(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. *Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).*

(Emphasis added.)

Defendants rely on the emphasized text quoted above. A claim "described in paragraph (1)(A)" of § 1441(c) is a claim pursuant to federal question jurisdiction. *See* 28 U.S.C. § 1441(c)(1)(A). Defendants argue that § 1441(c) stands for the proposition that, in all removal actions involving claims under both federal and state law, "'[o]nly defendants against whom a [federal question] claim . . . has been asserted are required to join in or consent to the removal under paragraph (1).'" But, the quoted phrase must be read in context, without disregarding the plain text of other portions of § 1441(c).

Paragraph (1) of § 1441(c) refers to a case in which a claim under federal question jurisdiction is joined with "a claim not within the original *or supplemental* jurisdiction of the district court or a claim that has been made nonremovable by statute." 28 U.S.C. § 1441(c)(1)(B) (emphasis added). And, it provides that, in such a case, "the entire action may

be removed if the action would be removable without the inclusion of the claim described in subparagraph (B)," over which the court could not exercise jurisdiction. *Id.* Section 1441(c)(2) requires that "the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed." In other words, § 1441(c)(1) provides a mechanism for removal to federal court of cases that combine claims under federal question jurisdiction with claims that a federal court has no jurisdiction to adjudicate. In that circumstance, the defendants as to the federal claims may remove the case to a federal district court. But, pursuant to § 1441(c)(2), the court must then sever and remand the claims over which the court lacks jurisdiction. Regardless of the position concerning removal of the defendants as to the claims over which the court lacks jurisdiction, the claims against them may not be litigated in federal court; they must be severed and remanded to state court.

As defendants concede, and as I conclude for reasons explained, *infra*, all of the claims against the State Law Defendants come within supplemental jurisdiction under 28 U.S.C. § 1367. Section 1441(c) has no application to a case, such as this one, in which federal question claims are combined with state law claims that form part of the same case or controversy as the federal claims and thus come within the district court's supplemental jurisdiction. As indicated, § 1441(c)(1)(B) expressly refers to claims that are "not within the original *or supplemental* jurisdiction of the district court." (Emphasis added.) It is only when a federal claim is combined with a state law claim over which the court *lacks* supplemental or original jurisdiction that "removal under subparagraph (1)" of section 1441(c) is authorized, 28 U.S.C. § 1441(c)(2), and only such a removal implicates § 1441(c)(2) and its limitation on the rule of unanimity.

This conclusion is dictated by the plain language of § 1441(c), and amply supported by

the legislative history.  Before the JVCA was enacted, § 1441(c) provided that, whenever a state court suit contained a claim within federal question jurisdiction joined with "separate and independent . . . otherwise non-removable claims or causes of action," the entire case could be removed to federal court, and the district court, "in its discretion," could choose whether to "determine all issues therein" or to "remand all matters in which State law predominates."  28 U.S.C. § 1441(c) (pre-JVCA).  The House Judiciary Committee Report on the JVCA indicates that the JVCA's revision of § 1441(c) was a response to rulings by several federal courts that the former § 1441(c) was "unconstitutional or raised constitutional concerns because, on its face, [former] subsection 1441(c) purport[ed] to give courts authority to decide state law claims for which the federal courts do not have original jurisdiction," while other federal courts had "chosen simply to remand the entire case to state court, thereby defeating access to Federal court."  H. Comm. on the Judiciary, Report on the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. Rep. No. 112-10, at 12 (2011) ("Report").  The Report also noted that leading legal commentators had declared that former § 1441(c) was "'useless and ought to have been repealed.'"  *Id.* (quoting WRIGHT & MILLER).  Accordingly, the Report described the intended effect of the new § 1441(c), *id.* (emphasis added):

> This section of the bill is intended to make changes to better serve the purpose for which the statute was originally designed, namely to provide a Federal forum for the resolution of Federal claims that fall within the original jurisdiction of the federal courts.  The amendment to subsection 1441(c) would permit the removal of the case but require that a district court remand *unrelated* state law matters.  This sever-and-remand approach *is intended to cure any constitutional problems* while preserving the defendant's right to remove claims arising under Federal law.

Thus, the legislative history confirms that § 1441(c), as amended by the JVCA, is addressed only to cases that involve federal claims combined with unrelated state law claims over which there is no federal jurisdiction.  It expressly excludes from its ambit cases that

involve federal claims combined with state law claims that form part of the same case or controversy and thus come within supplemental jurisdiction.

The JVCA was enacted relatively recently, and all but one of the federal judicial decisions interpreting the new § 1441(c) have, to my knowledge, reached the same conclusion. *See, e.g.*, *Vinson v. Schneider Nat'l Carriers, Inc.*, ___ F. Supp. 2d ___, 2013 WL 1799948, at *4 (N.D. Tex. April 29, 2013) ("[T]his provision only applies to a civil action that includes a federal question claim that is joined with a claim made nonremovable or one not falling within the court's original or supplemental jurisdiction."); *Marshall v. Boeing Co.*, ___ F. Supp. 2d ___, 2013 WL 1679481, at *3 (N.D. Ill. April 27, 2013) (stating, where case involved state law claims that came within supplemental jurisdiction, "the criteria of § 1441(c)(1) have not been satisfied"); *Huston v. Affinity Med. Sols., Inc.*, No. C12-5202, 2012 WL 6087394, at *2 (N.D. Cal. Dec. 6, 2012) ("[A]ll of Huston's state law claims . . . arise out of the same case or controversy as her federal cause of action . . . . This Court therefore has supplemental jurisdiction over all of the claims, and 28 U.S.C. § 1441(c) has no application to this case."); *Hayley v. Regions Bank*, No. 3:12-CV-437-WKW, 2012 WL 6028238, at *2 (M.D. Ala. Dec. 4, 2012) ("[W]hile 28 U.S.C. § 1441(c) contemplates severance and remand of certain claims upon removal of a larger case, it does so only for claims 'not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute.' Plaintiffs' state law claims fall squarely within this court's supplemental jurisdiction, making severance and remand unavailable."); *Shipley Garcia Enters., LLC v. Cureton*, Civ. No. M-12-89, 2012 WL 3249544, at *12 (S.D. Tex. Aug. 7, 2012) (stating that § 1441(c) "facially does not apply to an action over which the Court has original and supplemental jurisdiction").

To be sure, a single federal district court has reached a contrary conclusion, in an unreported opinion on which defendants rely. *See Moore v. City of Philadelphia*, Civ. No. 12-3823, 2012 WL 3731818, 2012 U.S. Dist. LEXIS 122789 (E.D. Pa. Aug. 29, 2012). In *Moore*, the district court interpreted § 1441(c), as amended by the JVCA, to provide that "where a case involves both federal and state law claims, but where some of the defendants have no federal law claims against them, such defendants need not consent to removal." *Id.*, 2012 WL 3731818, at *4. In a footnote, the court rejected the plaintiff's argument that, "in order to apply section 1441(c), 'defendants would have been required to establish that the state law claims here would not fall under this Court's supplemental jurisdiction and, thus, be independent and separate claims, capable of being severed and remanded to State Court.'" *Id.* at *4 n.1 (quoting plaintiff's submission). The *Moore* Court opined that this argument "reflects a faulty reading of the statute" and that, pursuant to the "last sentence of § 1441(c)(2)," the defendants "did not need to address supplemental jurisdiction to invoke this provision." *Id.*

I am not persuaded by the decision in *Moore*. The *Moore* Court overlooked that the last sentence of § 1441(c)(2), by its plain text, is limited to "removal under paragraph (1)" of § 1441(c). And, § 1441(c)(1) provides only for removal of cases that combine claims arising under federal law with separate claims that are outside of original or supplemental jurisdiction or are otherwise nonremovable. Therefore, I join the majority of district courts to have considered this issue, and conclude that cases that combine federal claims with state law claims over which there is supplemental jurisdiction are not governed by 28 U.S.C. § 1441(c).

It follows that § 1441(c)(2)'s exception to the rule of unanimity for non-federal defendants does not apply to a case in which all state law claims are subject to supplemental jurisdiction. This is such a case. As defendants expressly averred in their response to the

Court's Standing Order, all of plaintiffs' claims against the State Law Defendants come within supplemental jurisdiction. Certainly, "'[c]onsent of parties cannot give the courts of the United States jurisdiction.'" *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 265 (4th Cir. 2004). Nevertheless, upon my independent review, I readily agree that plaintiffs' claims against the State Law Defendants "form part of the same case or controversy under Article III of the United States Constitution" as their federal claims, so as to come within supplemental jurisdiction. 28 U.S.C. § 1367(a).

For the most part, plaintiffs allege that all of the defendants acted in concert with one another, in various ways, to defraud plaintiffs of their interests in four parcels of real property.[10] As to the State Law Defendants, plaintiffs contend that Mballa and the Granite Defendants were active participants in the alleged scheme. Specifically, the Granite Defendants allegedly served as mortgage brokers in referring the Moores to Imagine Capital, *see* Complaint ¶ 446, and "played a critical role in facilitating the fraudulent transaction by making strong recommendations about the liquidity and trustworthiness of Imagine Capital and its principals," *id.* ¶ 243, which the Granite Defendants allegedly knew were false and made intentionally for the purpose of defrauding the Moores. *See id.* ¶¶ 308-09. Ms. Mballa allegedly was a "straw buyer recruited by [the E&W Defendants and Cardinal]," *id.* ¶ 173, to purchase one of the three parcels of real property at issue. According to plaintiffs, Mballa aided and abetted the other defendants with the fraudulent scheme. *See id.* ¶¶ 384-86.

As to the other two State Law Defendants, Wells Fargo and ETS Maryland, plaintiffs do not contend that they were active participants in the alleged scheme. Rather, Wells Fargo and ETS Maryland were named as defendants because, after the allegedly fraudulent transactions

---

[10] In reciting the allegations advanced by plaintiffs, I make no comment as to the viability of plaintiffs' claims.

occurred, Wells Fargo and ETS Maryland acquired interests in two of the parcels of real property at issue, and thus are necessary defendants to plaintiffs' claims to quiet title to the properties. Wells Fargo, in particular, was the mortgage lender for Ms. Mballa's purchase of one of the properties. Notably, Wells Fargo also agrees that the claim against it is subject to supplemental jurisdiction. *See* ECF 66.

ETS Maryland is a defendant only as to Count Twenty-Four of the Complaint, which seeks to quiet title to another one of the properties at issue, 614 North Carey Street, in Baltimore. According to the Complaint, ETS Maryland acquired an interest in 614 North Carey Street as a result of a tax lien foreclosure proceeding that is unconnected to the alleged fraudulent scheme of the other defendants. *See* Complaint ¶¶ 419-22. Thus, the argument for supplemental jurisdiction over the claim against ETS Maryland might appear to be weaker than for the quiet title claim as to Wells Fargo. However, Imagine Capital is also a defendant as to Count Twenty-Four, because plaintiffs seek to remove another encumbrance on the title to 614 North Carey Street that Imagine Capital allegedly placed on the property in connection with the alleged scheme. And, under Maryland law, "[a]ny person who appears of record" to have an interest in a parcel of real property "shall be made a defendant" in a proceeding to quiet title to that property. Md. Code (2010 Repl. Vol., 2012 Supp.), § 14-108(b) of the Real Property Article. Because plaintiffs seek to quiet title over a property that is the subject of the federal claims in the lawsuit, the quiet title claim, as against both defendants to it, forms part of the same case or controversy as plaintiffs' federal claims. *See, e.g.*, *United States v. Miljus*, Civ. No. 06-1832-PK, 2007 WL 3171591, at *2 (D. Or. Oct. 25, 2007) ("It is Section 1367 that permits this court to exercise supplemental jurisdiction over Fair's claims in which he seeks to quiet title over the portion of the Miljus property on which he resides; because he seeks clear title over a portion of the

property that is the subject of the United States' foreclosure action, his cross-claims and counterclaim necessarily form part of the same case or controversy as the United States' claims.").

In sum, all claims in this action are subject to either original jurisdiction on the basis of federal question, *see* 28 U.S.C. § 1331, or supplemental jurisdiction. *See* 28 U.S.C. § 1367. Therefore, 28 U.S.C. § 1441(c) does not apply, nor does the limited exception to the rule of unanimity contained in § 1441(c)(2). It follows that, pursuant to 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action."

## C. Whether All Defendants (Other Than ETS Maryland) Lawfully Consented to Removal

All of the defendants who remain in the action, other than ETS Maryland, have filed notices purporting to consent to removal. But, plaintiffs maintain that several of the defendants did not properly consent to removal because they failed to file their consents within the time provided, as gleaned from the JVCA. Defendants protest that § 1446, as amended by the JVCA, does not expressly establish a time for earlier-served defendants to consent to a later-served defendant's Notice of Removal. From this congressional silence, they conclude that no particular time is prescribed, so long as each defendant consents within a "reasonable" time.

As noted, before the enactment of the JVCA, the rule of unanimity was not made explicit by the removal statutes. Rather, the rule of unanimity was derived from the authorization in former 28 U.S.C. § 1441(a) of removal by "the defendant *or the defendants*." (Emphasis added.) In addition, former § 1446(b) specified a thirty-day window for removal, but did not indicate how the thirty-day window was to be applied in a case involving more than one defendant. Former § 1446(b) stated: "The notice of removal of a civil action or proceeding shall be filed

within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting for the claim for relief upon which such action or proceeding is based . . . ."

In *Barbour v. Int'l Union*, *supra*, 640 F.3d 599 (4th Cir. 2011) (en banc), the Fourth Circuit observed that the thirty-day window was "straightforward" in the context of a single defendant, and easy to apply when all defendants are served on the same date. In that circumstance, "the notice of removal must be filed within thirty days of the date of service, and all the defendants must consent to and join the notice of removal." *Barbour*, 640 F.3d at 605-06. However, in a case involving multiple defendants served on different dates, the Court explained that the federal appellate courts used three different approaches to apply the thirty-day window.

One approach, the "First-Served Defendant Rule," originally articulated in *Getty Oil Corp. v. Insurance Co. of North America*, 842 F.2d 1254 (5th Cir. 1988), required "a notice of removal to be filed within thirty days of service on the first-served defendant and require[d] all defendants to join the notice of removal within the first-served defendant's thirty-day window." *Barbour*, 640 F.3d at 607. Another approach, adopted in several circuits, was the "Last-Served Defendant Rule," under which "'each defendant, upon formal service of process, [was entitled to] thirty days to file a notice of removal pursuant to § 1446(b)' and '[e]arlier-served defendants may choose to join in a later-served defendant's motion or not.'" *Id.* at 609 (citation omitted). The Fourth Circuit did not adhere to either of these rules. Instead, it had adopted the "*McKinney* Intermediate Rule," articulated in *McKinney v. Board of Trustees of Maryland Community College*, 955 F.3d 924 (4th Cir. 1992). Under that rule, "a notice of removal [had] to be filed within the first-served defendant's thirty-day window, but . . . later-served defendants [were] afforded] thirty days from the date they were served to join the notice of removal." *Barbour*,

640 F.3d at 607. In *Barbour*, the Fourth Circuit reaffirmed its adherence to the *McKinney* Intermediate Rule.

Less than a year later, Congress passed the JVCA, which overruled *Barbour* and *McKinney* on this point and, in essence, statutorily adopted the Last-Served Defendant Rule, thereby resolving the circuit split. As amended by the JVCA, § 1446(b)(2) now provides:

> (A) When a civil action is removed solely under [28 U.S.C. §] 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

> (B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

> (C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

Each defendant has thirty days from the date of service to file a notice of removal. But, the amended statute arguably remains unclear in one respect: although it indicates that each defendant is entitled to thirty days after service in which to "file [a] notice of removal," § 1446(b)(2)(B), and indicates that an earlier-served defendant may "consent" to timely removal by a later-served defendant, § 1446(b)(2)(C), the statute does not expressly indicate how much time is available to the earlier-served defendant in which to "consent" to a later-served defendant's notice of removal.

Defendants argue that removal is proper if all of the defendants file consents within a "reasonable" time. But, defendants' proposed "reasonableness" standard is divorced from the text of § 1446 and is inconsistent with *Barbour*. Under *Barbour*, "once a timely petition [is] filed within the initial thirty-day window, each later-served defendant should have thirty-days from the date of service in which to join the petition for removal, because § 1446(b) allows each

defendant thirty days in which to act." *Id.* at 612 n.4; *accord McKinney*, 955 F.2d at 928 ("[W]e hold that . . . individual defendants have thirty days from the time they are served with process or with a complaint to join in an otherwise valid removal petition.").

To be sure, *Barbour* and *McKinney* were legislatively overruled with respect to whether the date of service on the first-served defendant triggered the window for filing of the Notice of Removal. But, *Barbour* and *McKinney* were not overruled with respect to the deadline for other defendants to join a Notice of Removal, and a healthy respect for circuit precedent would suggest that *Barbour* and *McKinney* should be considered overruled only to the extent that they are incompatible with the JVCA. In this regard, it is noteworthy that the House Judiciary Committee Report on the JVCA indicates that the amendments to § 1446(b)(2) were simply intended to resolve the circuit split regarding "determining the date on which the 30-day period begins to run." Report at 13. Nothing in the JVCA suggests that Congress wished to provide an open-ended time for removal. To the contrary, the JVCA directs that each defendant is entitled to a thirty-day period after being served, and the House Judiciary Committee Report states that the JVCA is not intended to "allow an indefinite period for removal." Report at 14.

Moreover, given that the JVCA adopted the Last-Served Defendant Rule by statute, it is pertinent that the circuits that had previously adopted the Last-Served Defendant Rule required that "the later-served defendant receive the consent of all then-served defendants *at the time he files his notice of removal*." *Bailey v. Janssen Pharm., Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008) (emphasis added); *accord Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) ("We hold that the later-served defendants in this case had thirty days from the date of service on them to file *a notice of removal with the unanimous consent of their co-defendants . . . .*") (Emphasis added); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527

(6th Cir. 1999) ("[W]e hold that a later-served defendant has 30 days from the date of service to remove a case to federal district court, *with the consent of the remaining defendants*.") (Emphasis added).

In light of the current statute's affirmative statement that "[e]ach defendant shall have 30 days" in which to make a removal decision; in light of *Barbour* and *McKinney*; and given the statute's statement that an earlier-served defendant may "consent" to a notice of removal, it is reasonable to interpret the statute as plaintiffs do:  "[A]ny defendant properly joined and served prior to the Notice of Removal would have to join in or consent to the Notice of Removal at [the] later of (1) when it is filed; or (2) 30 days after the defendant was served with the Summons and Complaint."  Motion to Remand at 4.

Undoubtedly, the rule of unanimity might require coordination among the defendants.  If a defendant's guaranteed thirty-day time to file a notice of removal under § 1441(b)(2)(B) has expired, the rule of unanimity under § 1441(b)(2)(C) would require a later-served defendant to obtain consent from the earlier-served defendant as of the time the later-served defendant files its notice of removal.

The Fourth Circuit's recent decision in *Mayo v. Board of Education of Prince George's County*, 713 F.3d 735 (4th Cir. 2013), appears to accord with this interpretation.  In *Mayo*, the Court held that "a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal."  *Id.* at 742.  As in this case with the Stonegate Defendants and Cardinal, the defendant in *Mayo* to whose consent the removing defendant's attorney had attested had also filed separate "papers early on, signed by its attorney, indicating that it had consented to the removal."  *Id.*  The Fourth Circuit commented: "Because

the [other defendant's] written indication of consent was filed more than 30 days after its receipt of the complaint by process, that written indication, the [plaintiffs] say, cannot be advanced to satisfy the time requirement for removal." *Id.* at 742 n.2. Although the Fourth Circuit did not expressly resolve the plaintiffs' argument, it relied, tellingly, on the attestation of the removing defendant's counsel in the notice of removal, rather than the subsequent separate consent, to hold that the rule of unanimity had been satisfied.

As noted, the Imagine Defendants and the King Defendants filed the Notice of Removal on September 12, 2012. The Removing Defendants expressly asserted that the Stonegate Defendants, Cardinal, Ms. Mballa, Wells Fargo, and ETS Maryland had been served, and that the Stonegate Defendants and Cardinal consented to removal. Under *Mayo*, the Removing Defendants' representation in the Notice of Removal that the Stonegate Defendants and Cardinal consented was sufficient to effectuate their consent. *See Mayo*, 713 F.3d at 742 (holding "that a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal"). Thus, it is immaterial that both Cardinal and the Stonegate Defendants also filed separate, subsequent written notices of consent to removal, which plaintiffs contend were untimely.

The Removing Defendants did not aver that any other defendants consented to removal. Plaintiffs contend that, based on various dates of service, several other defendants failed timely to join in the removal. Specifically, two of the Granite Defendants, Granite Development, LLC and Granite Partners, LLC, as well as Wells Fargo, were served on July 30, 2012, which was more than thirty days prior to the filing of the Notice of Removal on September 12, 2012. Thus, plaintiffs insist that these defendants were required to join in the Notice of Removal on the date

that it was filed in order for the Notice of Removal to be effective. Ms. Mballa was served on August 14, 2012, and Granite Finance, LLC was served on August 15, 2012. Therefore, their consents were due on or before September 13 and 14, 2012, respectively. Yet, the Granite Defendants did not file consents until September 24, 2012. Similarly, Ms. Mballa filed her consent on September 24, 2012, and Wells Fargo filed its consent on September 21, 2012.[11]

Ms. Mballa, Wells Fargo, Granite Development, LLC, Granite Finance, LLC, and Granite Partners, LLC (hereafter, the "Late Consenting Defendants") did not join in the Notice of Removal or consent to removal within thirty days after they had been served. If it were necessary to resolve this issue, I would likely conclude, based on the foregoing discussion, that their late-filed consents did not comply with 28 U.S.C. § 1446(b). Nevertheless, it is unnecessary to resolve this issue because, even assuming that the Late Consenting Defendants failed properly to consent to removal, this defect was cured by the subsequent filing of the Holderness Defendants' Notice Joining in the Petition for Removal, as I explain in the following section.

### D. Whether the Holderness Defendants' Notice Cured Prior Removal Defects

Even if consents to removal by the Late Consenting Defendants were untimely, the defect was cured by a subsequent event: the filing by the Holderness Defendants on September 27, 2012, of their Notice Joining in the Petition for Removal (ECF 64). Unlike the Late Consenting Defendants, the Holderness Defendants had never been served with the summons and complaint prior to filing their Notice.[12] As Judge Paul Grimm recently explained in *Trademark*

---

[11] ETS Maryland was served on July 31, 2012, and has never consented to removal. Moreover, plaintiffs contend that Holderness & Associates, LLC, was served on July 31, 2012, and it did not file a consent to removal until September 27, 2012. I address the Holderness Defendants and ETS Maryland in subsequent sections.

[12] Plaintiffs contend that one of the Holderness Defendants (Holderness & Associates,

*Remodeling, Inc. v. Rhines*, 853 F. Supp. 2d 532 (D. Md. 2012), the Supreme Court has held that a defendant's thirty-day period to remove a case is only triggered by formal, effective service of process. *See id.* at 539 (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)). Because § 1446(b)(2)(A) requires only the consent of "all defendants who have been properly joined and served," the Holderness Defendants' consent was not required to effectuate removal. Nonetheless, the Holderness Defendants had the right to remove the case. *See, e.g.*, *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1270 (M.D. Fla. 2009) ("[A]n unserved defendant in receipt of the complaint may remove prior to service[.]"); *accord Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 n.23 (5th Cir. 2000). And, because "'the removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service,'" *Trademark Remodeling*, 853 F. Supp. 2d at 539 (citation omitted), the Holderness Defendants' thirty-day deadline to remove never began to run, and so on September 27, 2012, they timely filed their Notice Joining in the Petition for Removal.

In that Notice, the Holderness Defendants incorporated the original Notice of Removal by reference and stated: "Upon information and belief, all parties to the case have formally consented to removal, with the exception of ETS Maryland . . . ." ECF 64 at 1. Pursuant to the Fourth Circuit's recent decision in *Mayo*, *supra*, 713 F.3d 735, this statement was sufficient to effectuate the consent of all defendants other than ETS Maryland.

---

LLC) was served on July 31, 2012, and filed a certification of service to that effect. *See* ECF 67. However, as defendants point out and as plaintiffs' certification of service shows, *see* Opposition at 4 & Ex.A, service on Holderness & Associates, LLC, was ineffective because, in contravention of Fed. R. Civ. P. 4(h)(1)(A) and Maryland Rule 2-121(a)(3), plaintiffs mailed the complaint and summons to Holderness & Associates, LLC via certified mail without requesting restricted delivery and, in fact, the individual who received the certified mailing was not Holderness & Associates' resident agent, to whom it was addressed. Instead, the documents were received by an employee of another business that is a tenant in the same building, who is not authorized to accept service on Holderness & Associates' behalf. Moreover, even if Holderness & Associates, LLC had been served, none of the other Holderness Defendants (*i.e.*, James Holderness and Holderness, Menchel & Alter, LLC) were ever served.

Accordingly, whether removal was proper hinges on whether ETS Maryland's consent to removal is required. I turn to that issue.

E. Whether ETS Maryland's Consent to Removal is Required

Defendants argue that ETS Maryland's consent to removal is not required because ETS Maryland is merely a "nominal" party. In *Letcher v. AC and S, Inc.*, Civ. No. MJG-12-3051, 2012 WL 5995244 (D. Md. Nov. 28, 2012), Judge Marvin J. Garbis provided a thorough survey of the current state of Fourth Circuit law with respect to whether a nominal party's consent to removal is required. He stated, *id.* at *1-2:

> The "rule of unanimity" under 28 U.S.C. § 1446(b)(2)(A) generally requires that all defendants who have been properly joined and served must join or consent to removal. *See Chaghervand v. CareFirst*, 909 F. Supp. 304, 308 (D. Md. 1995). However, by virtue of a judicially created exception a codefendant present in the case as a mere "nominal party" need not consent. *Creed v. Virginia*, 596 F. Supp. 2d 930, 934 (E.D. Va. 2009). The party seeking removal bears the burden of "proving that the objecting [or non-consenting] party is merely nominal." *Id.*
>
> *   *   *
>
> The Fourth Circuit has not stated a definition of "nominal party" for removal purposes. *See Saltillo v. Aramark Healthcare Support Servs.*, LLC, Civ. No. WDQ-11-0550, 2011 WL 3651048, at *2 (D. Md. Aug. 16, 2011). District courts in this circuit have stated various formulations of the attributes of a "nominal party," for example:
>
> 1. Whether "the court would be able to enter a final judgment in favor of the plaintiff in the absence of the [the putative nominal] defendant, without otherwise materially circumscribing the relief due." *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 696 (M.D.N.C. 2007).
>
> 2. Whether "looking at the facts of the case as they appear at the preliminary stage of a petition for removal, the party in question is in some manner genuinely adverse to the plaintiff." *Creed v. Virginia*, 596 F. Supp. 2d 930, 935 (E.D. Va. 2009).
>
> 3. Whether "there is any legal possibility for predicting that [the putative nominal party] may be held liable." *Allen v. Monsanto Co.*, 396 F. Supp. 2d 728, 733 (S.D. W. Va. 2005).

Circuits other than the Fourth, have defined a "nominal party" in various ways. For example:

1. Whether "there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court." *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991) (internal quotations omitted).

2. Whether "there is no reasonable basis for predicting that [the putative nominal party] will be held liable." *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993), *holding modified on other grounds by Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006).

3. Whether the putative nominal party is one "against whom no real relief is sought." *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) (internal quotations omitted).

In the current precedential climate, without a "nominal party" definition endorsed by the United States Court of Appeals for the Fourth Circuit, the Court finds guidance in the Fourth Circuit's view of the standard for determining whether there has been a fraudulent joinder in the diversity jurisdiction context. The Fourth Circuit has held fraudulent joinder exists if "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "No possibility" in the fraudulent joinder context does not require a federal court to predict how a state court or jury would resolve legal issues and weigh evidence nor a showing by any party of ultimate success on the merits to defeat removal, "[r]ather, there need be only a slight possibility of a right to relief" or a "glimmer of hope." *See id.* at 425-26.

\*   \*   \*

As with a fraudulent joinder contention, a nominal party contention does not require (or, perhaps not even allow) the federal court to embark upon an in-depth investigation of the record evidence pertinent to [a defendant's] liability to [the plaintiff] or assume jurisdiction over [the plaintiff's] claims for the purpose of weighing the evidence against [the defendant] and making a full ruling on the merits. *See Barlow v. John Crane Houdaille, Inc.*, CIV WMN-12-1780, 2012 WL 5388883, at \*2-3 (D. Md. Nov. 1, 2012). . . . Rather the Court is deciding, on the record before it, whether there is at least a "slight possibility" or a "glimmer of hope" that [the plaintiff] might prevail against [the defendant].

I agree with Judge Garbis that it is helpful to look to Fourth Circuit case law as to "fraudulent joinder" to resolve a contention regarding removal of a "nominal party." Under Fourth Circuit law, the "party alleging fraudulent joinder bears a heavy burden—it must show

that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal citations omitted). "Further, courts should 'resolve all doubts about the propriety of removal in favor of retained state court jurisdiction.'" *Id.* at 425 (citation omitted).

The "fraudulent joinder" doctrine ordinarily is applicable in the context of removal pursuant to diversity jurisdiction. "Fraudulent joinder has been developed and applied almost exclusively in cases in which a nondiverse defendant is fraudulently joined to defeat removal pursuant to federal diversity jurisdiction." *Simpson v. Union Pac. R. Co.*, 282 F. Supp. 2d 1151, 1155 (N.D. Cal. 2003). In such a case, "plaintiffs would have prevented removal from the outset by including baseless claims which, on the face of the complaint, destroyed federal jurisdiction in an otherwise removable case," and so "[a]pplication of the fraudulent joinder doctrine both prevented plaintiffs from improperly manipulating federal jurisdiction and protected defendants' legal right to remove." *Id.* at 1156.

This case was removed pursuant to federal question jurisdiction, however. As the *Simpson* Court explained, it is questionable whether the doctrine should apply in the context of federal question jurisdiction, to defeat a defendant's non-consent to removal, *id.*:

> The complaint filed by plaintiffs in [such an] action [does] not automatically preclude removal. Nor [does] any aspect of plaintiffs' allegations destroy removal jurisdiction. . . . What stymie[s] defendants' initial attempts to remove [i]s not a legal barrier created by the complaint but the refusal of their codefendant . . . to consent to removal. . . .

> Under these circumstances, the fraudulent joinder exception is not necessary to prevent plaintiffs from manipulating the forum. [In such a case] the only obstacle to removal—the consent of all defendants—does not lie within the control of the plaintiffs and therefore is not susceptible to manipulation through

improper allegations in the complaint. Absent collusion, plaintiffs could not have known in advance that the [non-consenting defendant] would refuse to join in removal, and so could not have affected the forum by advancing fraudulent claims against that particular defendant.

In its reported opinions, the Fourth Circuit has never specifically endorsed application of the fraudulent joinder or nominal party doctrine outside the context of diversity jurisdiction. *See Mayes v. Rapoport*, 198 F.3d 457 (4th Cir. 1999) (applying fraudulent joinder doctrine in context of whether nondiverse defendant could be disregarded for purposes of establishing diversity jurisdiction in removal); *Hartley*, 197 F.3d 422 (same); *Marshall v. Manville Sales Corp.*, 6 F.3d 229 (4th Cir. 1993) (same). Nevertheless, assuming for the sake of argument that the fraudulent joinder doctrine could apply here, I conclude that defendants have not met their "heavy burden," *Hartley*, 187 F.3d at 424, to show that there is not even a "glimmer of hope" that plaintiffs might prevail against ETS Maryland. *Id.* at 426.

Plaintiffs' sole count against ETS Maryland seeks to quiet title to a parcel of real property over which ETS Maryland instituted a tax lien foreclosure action, which was litigated to judgment. Defendants' contention that ETS Maryland is not properly joined stems from the fact that, during the pendency of the tax lien foreclosure action, ETS Maryland assigned its rights to the tax sale certificate at issue to another entity, 2009 DRR-ETS, LLC, and filed a motion in the tax lien foreclosure action to substitute 2009 DRR-ETS as plaintiff. Judgment was subsequently entered in the tax lien foreclosure action in favor of "Plaintiff," without further elucidation. Defendants assert that the judgment was in favor of 2009 DRR-ETS, and that ETS Maryland has no interest in the property at issue. Defendants also have proffered an affidavit of counsel for 2009 DRR-ETS, stating that 2009 DRR-ETS stands ready to vacate the judgment in the tax lien foreclosure action and has offered to plaintiffs to consent to a motion to vacate the judgment, eliminating the necessity of joining 2009 DRR-ETS as a defendant in this case. Plaintiffs

maintain, in contrast, that the circuit court records from the case reflect that ETS Maryland retained its designation as "Plaintiff" and that 2009 DRR-ETS was the "Substitute Plaintiff," and thus that the judgment in favor of "Plaintiff" was entered in favor of ETS Maryland. Moreover, they reason that 2009 DRR-ETS's current willingness to vacate the judgment in the tax lien foreclosure action does not affect whether removal was proper at the time of removal or whether plaintiffs properly pleaded a claim against ETS Maryland in their complaint.

Although defendants may ultimately be correct that plaintiffs' claim against ETS Maryland lacks merit, a court evaluating a "nominal party" or "fraudulent joinder" contention is not in a position of evaluating the full merits of the parties' controversy. Defendants wish to place the records of the tax lien foreclosure action before this Court and have this Court parse those records to determine whether ETS Maryland or 2009 DRR-ETS is the proper defendant. Such a searching evaluation of record evidence would go beyond the proper scope of determining whether there is a mere "glimmer of hope" for plaintiffs' claims. *Hartley*, 187 F.3d at 426. Because the judgment in the tax lien foreclosure action was not unambiguously entered in favor of 2009 DRR-ETS, rather than ETS Maryland, there remains a "glimmer of hope" that plaintiffs have a viable claim against ETS Maryland. Therefore, ETS Maryland is not merely a nominal party. It follows that its consent was necessary to remove the action from state court.

It bears noting that it was within defendants' power to coordinate with their codefendants and obtain actual unanimous consent to removal, including the consent of ETS Maryland. They failed to do so, insisting incorrectly that the rule of unanimity did not apply. 2009 DRR-ETS and ETS Maryland were represented by the same counsel in the tax lien foreclosure action. Although defendants were able to obtain and submit an affidavit of 2009 DRR-ETS's counsel in support of

their claims, they were not able to obtain ETS Maryland's consent to removal. That is fatal to their removal attempt.

## Conclusion

Because the rule of unanimity under 28 U.S.C. § 1446(b)(2)(A) was not satisfied, removal of this action from state court was improper. Accordingly, the action will be remanded to the Circuit Court for Baltimore City by the Order that accompanies this Memorandum Opinion.[13]

Date: July 11, 2013                _____/s/_____

                                      Ellen Lipton Hollander
                                      United States District Judge

---

[13] Because the propriety of removal turned, in part, on interpretation of provisions of the newly-enacted JVCA, as to which there was no controlling precedent at the time of removal, I exercise my discretion to decline to award attorneys' fees and other costs of removal to plaintiffs, pursuant to 28 U.S.C. § 1447(c).